**Barney D. WELCH, Appellant,**

v.

**Gerald Glenn GAMMAGE, Appellee.**

**No. 12475.**

Court of Civil Appeals of Texas, Austin.

Dec. 8, 1976.

Rehearing Denied Jan. 5, 1977.

J. P. Darrouzet, Austin, for appellant, on appeal only.

H. Lee Godfrey, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellee.

SHANNON, Justice.

This appeal concerns the right *vel non* of Gerald Glenn Gammage, a real estate salesman, to a payment in the nature of a commission from the sale of a 4.37-acre tract of land in Travis County.

Appellee, Gammage, sued appellant, Barney D. Welch, in the district court of Travis County for $8,905 as a commission and for attorney's fees. After trial to a jury, judgment was entered for Gammage for $11,-904.

In his trial petition Gammage declared that before September 14, 1973, he and Welch came to an understanding concerning the opening of a real estate office to be known as "All-State Properties." On September 14, 1973, the parties entered into a "Broker and Salesman" contract pursuant to which Gammage was to act as real estate salesman. Gammage agreed to hire and train a number of residential and commercial real estate salespersons. Under the said contract Welch would charge the "usual and customary" commission for the services performed by Gammage and himself, and seventy percent of all such commissions would be paid to Gammage and thirty percent would be paid to Welch. It was further agreed that if a sale were made by a salesperson other than Gammage, that person would be entitled to fifty percent of the commission and Gammage would be entitled to twenty percent of the commission.

Gammage pleaded further that he obtained a listing of a 4.37-acre tract of land located in Travis County, and owned by Frances Karber, and his wife, Rosalie. By the terms of that listing the Karbers were to pay All-State Properties a six percent real estate commission upon the sale of the land. While the listing was still in effect, Gammage alleged that he interested Welch in the purchase of the land, and that Welch agreed to pay him seventy percent of six percent of the total price.

After the Karbers listed the land with All-State Properties, at least two prospective buyers or their representatives called upon Gammage to submit offers to the Karbers. The Karbers declined these offers.

One of the prospective purchasers was P. R. Bonds, who was also a broker associated with All-State Properties. It was during the negotiation of Bond's offer with the Karbers and Gammage that Welch decided to submit to the Karbers his offer to purchase the tract. Gammage assisted Welch in preparing the written offer. That offer provided for the payment of a six percent commission. The Karbers declined Welch's offer.

At a later time Welch, acting alone, bargained with the Karbers for the land, and on October 22, 1973, he signed a contract for the purchase of the land. That contract did not provide for the payment of a commission. Welch later assigned the contract of sale to another for a consideration of $9,000. Gammage, of course, views Welch's assignment of the contract as a device to escape payment of the commission.

Gammage testified that before Welch entered into the contract with the Karbers to buy the land, Welch agreed to pay Gammage seventy percent of six percent of the sales price. Welch denied such an agreement, and further denied that the Karber tract was Gammage's "listing." Welch refused to pay Gammage anything from the Karber sale.

The cause was submitted to the jury by two special issues. Welch did not object to the general manner of the submission, nor did he object that the jury was not limited by the submission to the consideration of a commission owed Gammage under the "Broker and Salesman" contract. In response to the first issue, the jury answered that ". . . Mr. Welch owes Mr. Gammage a commission based on the Karber tract." The jury answered, second, that the amount of the commission owed Gammage by Welch was $8,904.

As previously indicated, judgment was entered for Gammage for $11,904, which sum represented $8,904 for the commission and $3,000 for attorney's fees.

■ Welch attacks the judgment by a number of points of error. By five points of error he claims that the judgment is not supported by any pleading, and further, that there is no evidence to support the jury's response that Welch owed Gammage ". . . a *commission* based on the Karber tract." (Emphasis supplied) His argument is as follows: Gammage pleaded a recovery under the terms of the parties' "Broker and Salesman" contract which provided that seventy percent of all *commissions* would be paid to Gammage. Because the final contract of purchase and sale between Welch and the Karbers did *not* provide for a *commission,* Welch claims that under the "Broker and Salesman" contract nothing was due Gammage.

Welch's argument overlooks the fact that the matter of an oral agreement by Welch to pay a fee to Gammage on the Karber transaction was tried by implied consent. Tex.R.Civ.P. 67. In this connection, Gammage was permitted to testify without objection that Welch told him that ". . . I didn't need to worry, that he [Welch] would pay the commission just like he would if we [All-State Properties] received a commission from someone else." A part of the oral deposition of P. R. Bonds, a broker who was formerly with All-State Properties, was read into evidence. Deposition testimony was received without objection that Welch told Bond no matter who bought the Karber tract, Gammage would receive his part of the commission on the sale.

As previously noticed, Welch made no effort at the time of the preparation of the charge to limit the consideration of the jury to a commission owed Gammage under the terms of the "Broker and Salesman" contract. Instead, the jury was charged simply concerning a "commission" owed Gammage by Welch. The word "commission" usually means in this context the percentage or allowance made to a factor or agent for transacting business for another. The jury was free under the court's charge to consider, and believe, Gammage's evidence concerning Welch's oral agreement to pay Gammage seventy percent of six percent of the sales price.

Welch's final point complains of the entry of the judgment awarding attorney's fees to Gammage. The claimed basis for the point is that Gammage failed to prove the presentment of his claim to Welch so as to be entitled to attorney's fees under Tex. Rev.Civ.Stat.Ann. art. 2226.

Presentment is a step on which Gammage "must fall down, or else o'erleap," for in his way it lies.[1] One way in which he seeks to "o'erleap" it is by contending that a request for admissions and Welch's response to that request operated as a presentment of his claim. In response to a request for admission, Welch admitted that he ". . . refused to pay and still refuses to pay the said sum [$8,905] to Plaintiff, Gerald Glenn Gammage."

Gammage did not introduce the request for admission and its response into evidence. The better practice is to introduce the requests for admissions and the responses into evidence. Nevertheless, requests for admissions and responses may be considered as a part of the record if they were filed with the clerk of the court at trial time. *Insurance Co. of No. Am. v. Fire Insurance Exch.*, 508 S.W.2d 703 (Tex. Civ.App.1974, no writ); *Pacific Finance Corporation v. Ramsey*, 305 S.W.2d 297 (Tex.Civ.App.1957, no writ). Appellant's point is overruled.

1. "The Prince of Cumberland!  that is a step
On which I must fall down, or else o'erleap,
For in my way it lies."
—Shakespeare, *Macbeth*, Act I, iv, 49.

The judgment is affirmed.

Affirmed.