Eugene C. JONES et ux., Petitioners,

v.

Jared L. KELLEY, Sr. et al.,
Respondents.

No. B–9739.

Supreme Court of Texas.

March 4, 1981.

Rehearing Denied April 15, 1981.

Provost, Umphrey, Doyle & McPherson, Steven M. Rienstra, Port Arthur, for petitioners.

Hebinck & Associates, Bernard L. Hebinck, Houston, for respondents.

SPEARS, Justice.

This is a suit for specific performance to convey real estate. Buyers, Jared L. Kelley and Olga Kelley and the Texas Veterans Land Board, brought suit against sellers, Eugene Jones and Della Mae Jones, for specific performance of two earnest money contracts for the sale of a tract of land in Shelby County. Trial was to a jury, and based upon its findings, judgment was entered for the Kelleys decreeing specific performance. The trial court, however, granted that portion of the Joneses' motion for judgment notwithstanding the verdict denying the Kelleys recovery of attorney's fees. The court of civil appeals affirmed the judgment of the trial court. 602 S.W.2d 573. Both parties have filed applications in this court. The Joneses' application attacks the judgment requiring specific performance. The Kelleys' application complains of the failure of the court of civil appeals to hold that presentment of their claim was made, entitling them to the attorney's fees found by the jury.

We reform the judgment of the court of civil appeals to provide for the recovery by the Kelleys of attorney's fees in the amount determined by the jury. In all other respects the judgment is affirmed.

Three issues are presented: (1) whether the four documents consummating the sale of the subject property may be construed together as one contract; (2) whether the description of the property contained in the four documents if they are construed together is sufficient to satisfy the statute of frauds, Tex.Bus. & Com.Code Ann. § 26.-01(b)(4); and (3) whether presentment of the Kelleys' claim was established as a matter of law entitling the Kelleys to the jury's award of attorney's fees.

The Joneses owned a 116 acre tract of land in Shelby County.[1] They listed the tract for sale with a real estate agency specifying that the purchase price was to be paid either in "cash or G.I.". Mr. Kelley, a veteran, secured the aid of the Texas Veter-

---

1. The land was originally thought to contain 127.55 acres, but was determined by the jury to contain 116 acres. There is no dispute over the actual acreage found by the jury nor over the reformation of the contract by the trial court.

ans Land Board to assist him in purchasing the property. The Joneses cooperated with the Kelleys in the financing arrangements with the Veterans Land Board.

Their agreement was to sell the entire 127.55 acre tract and consisted of two earnest money contracts between the Joneses and the Kelleys, the Veterans Land Board Application and Contract for Sale, and the Joneses' affidavit. Under one of the earnest money contracts, the parties agreed that the contract was assignable by the Kelleys to the Veterans Land Board which would take title to 36 acres of the Joneses' property in its name for cash. The Board would then resell that 36 acres to the Kelleys under the provisions of the Texas Veterans Land Act, art. 5421m Tex.Rev.Civ. Stat.Ann. The Joneses would sell the remainder of the property, 91.55 acres, directly to the Kelleys for cash plus a note executed by the Kelleys, the note to be secured by a Deed of Trust lien on the 91 acres. The Joneses would not retain any title or security interest in the land conveyed directly to the Veterans Land Board.

The Kelleys were the grantees in both earnest money contracts in which the Joneses agreed to convey the entire tract they owned in Shelby County to the Kelleys. The relevant portions of the documents may be summarized as follows:

1. An earnest money contract wherein Jones agrees to sell to Kelley, for the sum of $400 per acre, in cash, the premises described as the property "[l]ying and situated in the State of Texas, County of Shelby, and described as follows:"

"36 acres out of the W. W. Wagstaff Survey, A–796 in Shelby County, Texas."

This contract acknowledged that the "[p]urchaser has made application to purchase through Texas Veteran Land Board and has been assigned # 03147."

This contract also provides "[s]eller to furnish current survey by registered Surveyor as required by Veteran Land Board."

2. An earnest money contract wherein Jones agrees to sell to Kelley the premises described as:

"91.55 Acres out of the W. W. Wagstaff Survey A–796 and D. G. Green Survey A–263, in Shelby County, Texas" for a consideration of $400 per acre, with a cash payment of $5,493, and "[p]urchaser to make Note and Deed of Trust in favor of Seller" for the balance of the purchase price.

This contract provides that "[s]eller to furnish current survey by certified Surveyor," and further that "[t]his contract to be closed in conjunction with 36 Ac Vet Land Bd contract # 03147."

3. "Application and Contract of Sale—Texas Veterans' Land Program," providing that, with reference to the 36 acre tract, Jones "shall attach hereto a field note description of the above referenced property . . . ."

4. "Affidavit of Seller—Veterans Land Board of Texas" wherein Jones aver that they were the sellers of the described 36 acre tract, and that such tract "is a part of 127.55 acres that I purchased from C. Balsimo on May 1970 for a total consideration of $10,000.00 . . . . A surveyor field note description of an access easement is being furnished."

The Kelleys, in relying upon their agreement with the Joneses, expended $6,181.40 for survey fees, escrow payments, and fees and payments to the Veterans Land Board.

The Jones couple later refused to convey the property. On September 7, 1977, the Joneses sent a letter to the Veterans Land Board advising them that they would not go through with the sale. The Veterans Land Board replied, by letter to the Joneses, that the Kelleys intended to go through with the sale. Further, an uncontroverted transcript of a telephone conversation appears in the record between Mrs. Kelley and Mr. Jones in which Mrs. Kelley repeatedly told Mr. Jones of her determination to go through with the sale.

The Joneses contend that the description of the acreage in the earnest money contracts does not satisfy the statute of frauds, Tex.Bus. & Com.Code Ann. § 26.01(b)(4).

Specifically, they argue that there were two separate and distinct conveyances involved, and neither the 36 acre tract to be conveyed to the Veterans Land Board nor the remaining acreage were sufficiently described. It is conceded, however, that if the documents are construed together as one contract there is an adequate description of the property.[2] If the transaction consisted of two separate transactions, the property description is inadequate as to both tracts and the transaction fails.

■ We hold that the four instruments may be construed together and thus the description satisfies the statute of frauds. The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together. *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62, 65 (1959); *Veal v. Thomason*, 138 Tex. 341, 159 S.W.2d 472, 475 (1942); *Braniff Inv. Co. v. Robertson*, 124 Tex. 524, 81 S.W.2d 45, 50 (1935); *Libby v. Noel*, 581 S.W.2d 761, 764 (Tex.Civ. App.—El Paso 1976, writ ref'd n. r. e.).

The courts have construed contracts and instruments together in various situations in order to ascertain the intent of the parties. Several decisions indicate that instruments may be construed together or treated as one contract even though they are not between the same parties. *See Miles v. Martin, supra.* In *Board of Insurance Commissioners v. Great Southern Life Ins. Co.*, 150 Tex. 258, 239 S.W.2d 803 (1951), Texas Bankers Association entered into a trust agreement with Houston Bank and Trust Company. The agreement provided for the establishment of a pension trust and retirement plan for member banks' employees. The trustee was to acquire life insurance on each participant from participating bank funds. Southern Life issued individual life insurance policies on each employee. Southern Life asserted that it had not violated any group insurance law because individual policies had been issued. This court held that the insurance policies, the trust agreement, and the agreement between Great Southern and the Bankers Association must be construed together. We stated: "All of the instruments were a necessary part of the same transaction, without any one of which the transaction was not complete." In the present suit the transaction is the sale of the entire tract. Without the Veterans Land Board financing referred to in the contracts, the sale of the entire tract would not be complete.

In *Veal v. Thomason, supra*, separate oil and gas leases were involved covering a group of contiguous tracts of land owned by the various lessors in severalty. Each instrument contained recitals showing that the execution of similar leases by other lessors was contemplated by the parties, and the several leases were held to constitute but one contract just as though all of the lessors had signed the same piece of paper.

Although admitting that the documents were executed as part of one transaction, the Joneses argue that the purpose in executing the documents was not the same. The Joneses urge a distinction in that the 36 acre tract was to be sold for cash while as to the remaining acreage, the Joneses were to retain a substantial security inter-

---

2. During oral argument, counsel for the Joneses acknowledged that if the four instruments were construed as one transaction, the property description of the entire tract was legally sufficient:

> JUDGE: Would you agree that the court of civil appeals was correct, or would say they were incorrect, in their conclusion that you *can* tell where the property is and what the property is from examination of all four instruments with the field notes attached?
> COUNSEL: I concede that if you take their initial conclusion—that this is one transaction—yes, I concede that the law is that that being all the land that my clients owned in Shelby County—yes, you can determine from that what land you are talking about in total, but you still cannot distinguish what any one of these instruments refers to and I still contend .... which 36 or which remainder—where it is. And that the terms of the sales are simply different; it's simply on its face not a single contract. No, I concede once you reach that point and say, "yes, it's one contract to sell the whole farm," yes, they are absolutely correct on that point.

est in the property. In *Miles v. Martin, supra,* we said that the principle of construing contracts together was a "device for ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily and without regard to the realities of the situation." Id. 321 S.W.2d at p. 65.

Looking at the complete transaction it was the clear intent of both the Joneses and the Kelleys that the execution of the four documents was for the primary purpose of conveying all the subject property to the Kelleys. The property was listed by the real estate agent as one tract and the Kelleys intended to purchase the entire tract. Financing through the Veterans Land Board was only a means of achieving this objective. The Veterans Land Board was only interested in aiding Kelley, a veteran, in his purchase of the property and not in any acquisition of its own. The Joneses and Mr. Kelley executed the Veterans Land Board documents at the Joneses' daughter's home in Sheldon. Both of the earnest money contracts refer to the Veterans Land Board. The execution of four documents in this instance was only a means of accomplishing the singular and primary purpose of conveying the Joneses' entire tract to the Kelleys.

Since we have determined that the four documents must be construed together as one contract we need to determine whether the property description contained in these four documents satisfies the statute of frauds.

For a conveyance or contract of sale to meet the requirements of the statute of frauds, it must, insofar as the property description is concerned, furnish within itself or by reference to other identified writings then in existence, the means or data by which the particular land to be conveyed may be identified with specific certainty. *Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972); *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150, 152 (1945).

In *Kmiec v. Reagan,* 556 S.W.2d 567 (Tex. 1977), this court stated: "[w]hen the grant or is stated to be the owner of the property to be conveyed and it is proved that the grantor owns only a single tract answering the description, the land is identified with reasonable certainty." Id. at 569. In *Pickett v. Bishop,* 148 Tex. 207, 223 S.W.2d 222 (1949), the question concerned the sufficiency of a property description contained in a memorandum. The body of the memorandum describes the land as "my property described on the opposite side hereof." The reverse side of the memo contained an inadequate description. This court held that phrases such as "my property," "my land," or "owned by me," are sufficient when it is shown by extrinsic evidence that the party owns only one tract of land answering the description. We explained this holding by stating:

> The stated ownership of the property is in itself a matter of description which leads to the certain identification of the property and brings the description within the terms of the rule that the writing must furnish *within itself,* or by reference to some other extrinsic writing, the *means or data* by which the particular land to be conveyed may be identified with reasonable certainty. Id. at 224.

It is undisputed that the jury found that the Joneses intended to sell the entire 116 acre tract which the evidence shows was all the land the Joneses owned in Shelby County. In the Joneses' affidavit to the Veterans Land Board, one of the four documents consummating this transaction, the Joneses recited that they were the owners of the property conveyed by deed from C. Balsimo to Jones and the metes and bounds description of this property is in evidence. There is direct evidence that the Joneses actually chose the 36 acres to be conveyed to the Veterans Land Board. Both Kelley and Harmon, the real estate agent, testified that Jones aided in outlining with a yellow pen marker the 36 acres and placing the easements on a plat at the time of the signing of the Veterans Land Board documents on May 1, 1977. This plat showing the location of the 36 acres within the larger 116 acre tract and containing calls for course and distance of the 36 acres,

is in evidence and clearly and easily locates the exact 36 acres referred to. A complete and accurate survey of the 36 acres with minor changes and field notes was made a week later on May 8, 1977 and was sent in attached to the Veterans Land Board Contract and Application, document No. 3 above. As mentioned, the Joneses signed this document along with all the others. Thus, it is clear the 36 acres from the larger tract was sufficiently located by the plat before the parties at the time of signing. When the instruments are construed together, the description of the entire property to be conveyed is sufficient to satisfy the statute of frauds. Further, the reformation of the number of acres involved, being supported by the jury finding, was proper. There was no mutual mistake as to the identity of the subject property, only in the acreage.

■ We turn now to the third issue involved in this case—attorney's fees. The court of civil appeals held that the Kelleys did not plead or point to any evidence of presentment. The Kelleys' Third Amended Petition specifically pleads: "plaintiffs Kelley made demand on defendants to convey the property made the subject of this lawsuit more than 30 days preceding the filing of this action, but said land was not conveyed . . . ." Thus, there were pleadings to support the jury's award of attorney's fees.

■ We turn now to the question concerning presentment of the contract claim. Article 2226, Tex.Rev.Civ.Stat.Ann., as amended in 1979, provides for the recovery of a reasonable amount as attorney's fees in addition to one's claim and costs, for the successful prosecution of a suit founded on a written contract.[3] A necessary requisite for the recovery of attorney's fees is the presentment of the contract claim to the opposing party and the failure of that party

to tender performance. The statute further provides that it is to "be liberally construed to promote its underlying purposes."

■ The purpose of the requirement for presentation of a claim is to allow the person against whom it is asserted an opportunity to pay a claim within 30 days after they have notice of the claim without incurring an obligation for attorney's fees. No particular form of presentment is required. *Huff v. Fidelity Union Life Ins. Co.*, 158 Tex. 433, 312 S.W.2d 493, 500 (1958); *Hudson v. Smith*, 391 S.W.2d 441, 452 (Tex.Civ.App.—Houston 1965, writ ref'd n. r. e.).

Various forms of presentment have been held to be sufficient to support an award of attorney's fees under art. 2226. In *Huff v. Fidelity Union Life Ins. Co.*, *supra*, both oral and written demands were held to be sufficient. In *Welch v. Gammage*, 545 S.W.2d 223, 226 (Tex.Civ.App.—Austin 1977, writ ref'd n. r. e.), the court held that the request for admission and its response in which the party admitted he refused to pay a claim were sufficient as presentment. Finally, in *King Optical v. Auto. Data Processing, etc.*, 542 S.W.2d 213, 217 (Tex.Civ. App.—Waco 1976, writ ref'd n. r. e.), the court held that an oral request for payment met the presentment requirement of art. 2226.

■ The letter sent by the Veterans Land Board to the Joneses and the transcript of the telephone conversation between Mrs. Kelley and Mr. Jones establish presentment as a matter of law. Mr. Jones admitted he received the letter, and the contents of the letter and the telephone transcript were never controverted. During the telephone conversation Mrs. Kelley made it very clear that the Kelleys were insisting that the sale go through and were in the process of contacting an attorney.[4]

Mrs. Kelley: Well, sir, we are not in anyway going to sell that land to anyone else when we so desparately want it for ourselves. Now I am going to tell you, we have contacted a lawyer and you will be hearing from him. The Land Board is notified of the facts

---

3. Section 2 of the 1979 amendatory act provides that the act is remedial in character and is intended to apply to all pending actions regardless of the time of institution of the suit. 1979 Tex.Gen.Laws, ch. 314, § 2 at 718.

4. The following is an excerpt from the transcript of the telephone conversation:

The judgment of the court of civil appeals is reformed to provide for attorney's fees in the amount found by the jury, and as reformed is affirmed.

Dissenting opinion by CAMPBELL, J., in which GREENHILL, C. J., and POPE and BARROW, JJ., join.

CAMPBELL, Justice, dissenting.

I dissent.

The facts of this case are a classic example of what the Statute of Frauds was intended to prevent. The problem is whether the cumulative property descriptions in the four separate instruments are sufficient to enforce the two earnest money contracts.

The first contract, summarized in the Court's opinion, is to convey 36 acres for cash to the Veterans Land Board. The second is to convey 91.55 acres to the Kelleys. In this transaction the Kelleys were to make a $5,493.00 down payment and the balance was to be evidenced by a promissory note secured by a Deed of Trust.

A Veterans Land Board sale is not a method of financing as to the Joneses. It is a cash sale, conveyed to the Veterans Land Board of Texas (VLB) by general warranty deed. The VLB enters into a contract for deed with the veteran purchaser. We have two contracts to convey two tracts of land to two purchasers with two deeds, one to the VLB and one to the Kelleys. We must determine if the property descriptions are sufficient to enforce each of these conveyances.

The Statute of Frauds, Section 26.01 of the Business and Commerce Code, provides:

Section 26.01. Promise or Agreement Must be in Writing.

(a) A promise or agreement described in Subsection (b) of this section is not enforceable unless the promise or agreement, or a memorandum of it, is

(1) in writing; and

(2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him.

(b) Subsection (a) of this section applies to

. . . .

(4) a contract for the sale of real estate;

This Court has held that the writing must furnish within itself, or by reference to some other existing writing, the means or data by which the particular land to be conveyed may be identified with reasonable certainty. *U. S. Enterprises, Inc. v. Dauley,* 535 S.W.2d 623 (Tex.1976); *Williams v. Ellison,* 493 S.W.2d 734 (Tex.1973); *Morrow v. Shotwell,* 477 S.W.2d 538 (Tex.1972); *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150 (1945).

The two earnest money contracts provide: "Seller to furnish current survey by registered surveyor . . . ." It is undisputed that a current survey did not exist when these contracts were signed. The field note description, subsequently attached to Instrument No. 3, cannot be considered because it was not "some other existing writing" as required by *U. S. Enterprises, Inc. v. Dauley, supra, Williams v. Ellison, supra, Morrow v. Shotwell, supra, Wilson v. Fisher, supra,* and *Hobbs v. Bass,* 279 S.W.2d 480 (Tex.Civ.App.—Texarkana 1955, writ ref'd n. r. e.).

Instruments 1, 3 and 4 refer only to the VLB sale. The third instrument, the application and contract for sale, provides no assistance. The only description is "36 acres located in W. W. Wagstaff survey, A–796 Shelby County, Texas 12 miles N. (direction) from Center (County Seat), Texas . . . ." The fourth instrument, Affidavit of Seller—Veterans Land Board, states that the 36 acres is a part of 127.55 acres that the Joneses purchased from C. Balsimo in May 1970. This Court has held such a description to be insufficient. In *Smith v. Sorelle,* 126 Tex. 353, 87 S.W.2d 703 (1935), we held that a deed purporting to convey

that you are trying to back out of the deal, and we will not in any way give up this piece

of land. We have too much money invested in it now.

land, which describes it only by quantity and as being part of a larger tract, with nothing to identify what specific portion of the larger tract is intended to be conveyed, is invalid for uncertainty of description. In *Pfeiffer v. Lindsay*, 66 Tex. 123, 1 S.W. 264 (1886), this Court held the following description to be insufficient:

"[F]ifty acres of the J. M. Moss survey, abstract No. 462, situated near the town of Burlington, in Montague county, Texas."

The second contract, the earnest money contract between the Joneses and the Kelleys, described the land to be conveyed to the Kelleys as follows:

"91.55 acres out of the W. W. Wagstaff survey A–796 and D. G. Green survey A–263 in Shelby County, Texas."

This contract is lacking for the same reason as the 36 acre contract. Additionally, this 91.55 acre tract lies in two surveys, Wagstaff and Green, and the 36 acre tract was to be taken only from the Wagstaff survey.

As evidenced by the two earnest money contracts, the Joneses and Kelleys contracted for two separate conveyances. There is no way to determine which 36 acres will go to the VLB without lien or to which portion the Joneses are to retain their lien. These factors are highly significant to the VLB and to the Joneses. The VLB application and contract of sale provide that if the 36 acres does not abut on a public road the seller will provide a usable easement to a public road. The Kelleys attempted to show that the 36 acres was to have been at the back side of the farm and not abutting on a public road. However, no attempt was made to provide a description of the easement. Whether the land on which the Joneses were to retain a lien abutted on a public road and whether the land was to be encumbered with an easement would be decisive to them.

The four instruments fail to provide sufficient description to comply with the Statute of Frauds.

GREENHILL, C. J., and POPE and BARROW, JJ., join in this dissenting opinion.