# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00292-CV

**Appellant, Fernando DeLeon// Cross-Appellant, John Lacey**

**v.**

**Appellee, John Lacey// Cross-Appellee, Fernando DeLeon**

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 251,789, HONORABLE RICK MORRIS, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

This is an appeal by both parties from a judgment awarding damages to Fernando DeLeon for breach of a contractual warranty of good workmanship in the installation of a new roof by John Lacey. Both parties raise evidentiary-sufficiency challenges: Lacey to the district court's finding that he failed to install the roof in a good and workmanlike manner, and DeLeon to the district court's finding that he failed to present his claim to Lacey, thus precluding his recovery of attorney fees. We will affirm the judgment.

The background facts in this case are straightforward and largely undisputed. Lacey installed a new roof on DeLeon's home in June 2008. DeLeon discovered a leak in the roof several weeks later. Lacey made eight or nine attempts over the next 18 months to repair the leak, but when the two-year anniversary of the roof's installation passed—i.e., June 2010—Lacey told DeLeon that the warranty had expired and that DeLeon would be charged for any additional repair attempts.

Ultimately, DeLeon hired another roofer, Ron Bickel Construction and Roofing, who found the leak and repaired it for $1,500.

Shortly thereafter, Lacey sued DeLeon for declaratory judgment that he had not breached the roofing contract or any related warranty. DeLeon counterclaimed for breach of the contract's warranty that the work would be completed in a good and workmanlike manner and sought attorney fees. After a trial on the merits, the district court found that Lacey had failed to repair the roof in a good and workmanlike manner and awarded DeLeon $1,500 in damages, but denied his request for attorney fees based on its finding that he had failed to present his claim to Lacey. It is from this judgment that both parties appeal.

**Lacey's appeal**

As stated, Lacey challenges the evidentiary sufficiency of the district court's finding that he breached the roofing contract's warranty provision by "fail[ing] to perform the work required under the contract in a good and workmanlike manner." "Good and workmanlike manner" means "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987). The focus of the claim is not on the result of the work that was done, but on the manner in which it was done. *Id.*

Although legal- and factual-sufficiency standards of review are well established, the unusual procedural posture of this case warrants some discussion. Lacey initiated the underlying declaratory action, but the burden of proof at trial was DeLeon's as he was the party asserting

the affirmative claim of breach of warranty and, thus, was the party who would be defeated in the absence of evidence of the breach. *See Gonzalez v. Razi*, 338 S.W.3d 167, 169–70 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also Walker v. Money*, 120 S.W.2d 428, 431 (Tex. 1938) ("'The test for determining which party has the affirmative [claim], and therefore the burden of establishing a case, is found in the result of an inquiry as to which party would be successful if no evidence at all were given, the burden being of course on the adverse party.'" (quoting 22 C.J. p.70)). Thus, to successfully challenge on appeal the legal sufficiency of the district court's finding that he failed to perform the roofing work in a good and workmanlike manner, Lacey must show that there is no evidence that "would enable reasonable and fair-minded people to reach the verdict under review."[1] *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). When reviewing a legal-sufficiency challenge, we consider the evidence supporting the judgment, "credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *Id.* We consider the evidence in the light most favorable to the findings and indulge every reasonable inference that would support them. *Id.* at 822. Relatedly, to successfully challenge the factual sufficiency of the evidence supporting this same finding, Lacey must show that the finding is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In a factual-sufficiency review, "we consider and weigh all of the evidence supporting and contradicting the challenged finding." *Id.*

---

[1] In an appeal from a judgment rendered after a bench trial, the trial court's findings of fact serve the same function as the verdict of a jury. *See Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

The workmanship evidence was introduced through the testimony of DeLeon, Mike Pritchard, Lacey, and Jerry Don Aiken, whose testimony can be summarized as follows:

**DeLeon:**

- Asserted that Lacey's installation caused the leak, but acknowledged that high winds, workmen walking on the shingles, or branches rubbing on the shingles may have been the cause.

- Admitted that Lacey did not have a chance to see the roof immediately before Bickel repaired it and that Lacey was not told when Bickel would be repairing it.

- Admitted that no one took pictures of the roof immediately before Bickel repaired, but countered that Lacey had had two years to see it before then.

- Agreed that only Bickel has firsthand knowledge about the cause of the leak.

**Pritchard:**

- Employed as a supervisor and foreman for Bickel, the company that found and repaired DeLeon's roof leak; has been at Bickel for 20 years; has been a roofer since 1985; has built or repaired "thousands" of roofs.

- Explained that the leak in DeLeon's roof was located where the low-pitched part of the roof met a steep-pitched part of the roof. Stated that DeLeon's new roof leaked because the rubber liner of the low-pitched roof did not extend underneath the steep-pitched roof; in fact, the rubber liner of the low roof went over the shingles of the steep roof, meaning that water running off the steep roof's shingles would flow underneath the low-pitched roof and into the house.

- Asserted that these are known problem areas in roofs and that he would have installed this roof differently to make sure that the lower roof was underneath the steep roof.

- Explained that new roofs can leak from bad felt, pipe, bad shingles, and a hole in the felt, but insisted that it would not leak from the wind.

- Asserted that DeLeon's roof leak was caused by improper installation, not the wind, defective materials, etc.

4

- After considering the legal definition of "good and workmanlike manner," his professional opinion was that the quality of roof construction in the area around the leak was not "proficient" because the steep roof should have been on top of the lower sloped roof and, further, that Lacey should have anticipated this problem. Emphasized that Lacey should have been able to find and fix this leak.

- Admitted that he has not taken roofing-technology courses, does not belong to trade associations, and is not aware of the industry standard.

- Admitted that nails can back out and can cause leaks, and that those things happening do not indicate poor workmanship.

**Lacey:**

- Has been a roofer since 1998; is a certified roof inspector and contractor; has installed 2,500 to 3,000 roofs; and his employees are trained to install roofs.

- Asserted that he followed industry standards in installing DeLeon's roof and, specifically regarding the area of the alleged leak, maintained that he installed and sealed a base sheet that went from the low-pitched roof up to the steep-sloped side.

- Listed possible causes of leaks in new roofs: "absency to detail," wind blowing shingles up, defective materials, and nails or screws "backing out." Asserted that these things can occur even when a roof is installed properly.

- When asked "[D]o you have any doubt that it was done in a good and workmanlike manner," responded, "I have no reason to believe that it wasn't."

- Believes that high winds or foot traffic on the roof after a wind event may have caused the leak, but maintains that it was not his installation. Asserted that DeLeon's roof was installed correctly.

- Admitted that DeLeon's roof leaked after his company installed the roof.

- Explained that after all the problems with the roof, he sent a crew over to DeLeon's house to "tear th[e] roof off and to put it back on right so we wouldn't have this problem anymore."

**Aiken:**

- Called as an expert witness by Lacey. He listened to Lacey's testimony.

5

- He has been a roofer since 1971; he started a roofing business in 1992; has installed "two to three thousand roofs"; considers himself very familiar with the roofing business.

- Asserted that Lacey went "above and beyond how we install" roofs.

- Insisted that Lacey did the "maximum" a roofer could do.

- Stated, "There's only one way to put a roof down. It's elementary."

- Described Lacey's testimony regarding the causes of roof leaks as being absolutely accurate. Asserted that leaks can be caused by wind damage and that a wind storm that occurred in 2008 could have caused DeLeon's roof to leak.

- Questioned the quality of Bickel's roofing work in general.

Considering this evidence in the light most favorable to the district court's decision, we hold that there is more than a scintilla of evidence from which reasonable and fair-minded people could reach the judgment under review. *City of Keller*, 168 S.W.3d at 827. Pritchard testified that the leak in DeLeon's roof was caused by Lacey's improper installation of the steep-pitched roof in relationship to the low-pitched roof—specifically that Lacey installed the steep-pitched roof such that its rubber liner was below the low-pitched roof. A proper installation, according to Pritchard, would have been to ensure that both the felt and shingles of the steep-pitch roof were over the low roof. Lacey's installation was not, in Pritchard's professional opinion, proficient as that term is used in the legal definition of "good and workmanlike manner." Finally, Lacey himself admitted that there was a problem with the workmanship when he offered to "tear the[] roof off and to put it back on *right*." (Emphasis added.)

Reviewing the record as a whole, we also hold that the district court's finding is not "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain*,

6

709 S.W.2d at 176. Although Lacey and Aiken testified that Lacey's installation was done in a good and workmanlike manner and that there could have been other causes for the leaks, the district court, as factfinder, is the sole judge of credibility of the witnesses and the weight to be given to their testimony. *See City of Keller*, 168 S.W.3d at 819; *see also HealthTronics, Inc. v. Lisa Laser USA, Inc.*, 382 S.W.3d 567, 582 (Tex. App.—Austin 2012, no pet.) (applying standard where trial court was factfinder). The factfinder may choose to believe one witness and disbelieve another, and it may resolve inconsistencies in any witness's testimony. *See City of Keller*, 168 S.W.3d at 819.

*Spoliation*

In support of his evidentiary-sufficiency challenge, Lacey argues that, by repairing the leak, DeLeon spoliated evidence—i.e., intentionally or negligently destroyed evidence, *see Brookshire Bros., Ltd. v. Aldridge*, 438 S.W.3d 9, 14 (Tex. 2014)—that could have conclusively proven that Lacey installed the roof in a good and workmanlike manner. Because evidence that was not admitted into the record cannot inform an evidentiary-sufficiency analysis, *see City of Keller*, 168 S.W.3d at 821–28 (discussing review of evidence *in the record* in context of legal sufficiency); *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) ("In reviewing a factual sufficiency point, the court of appeals must weigh all of the evidence in the record.") (emphasis omitted); *Wynn v. Silver Oaks Apts., Ltd.*, No. 04-12-00727-CV, 2014 WL 60657, at *1 (Tex. App.—San Antonio Jan. 8, 2014, no pet.) (mem. op.) (rejecting appellant's reference to documents outside the record in evidentiary-sufficiency review and noting that "in conducting our review, we consider only the evidence admitted at trial"), we will liberally construe Lacey's argument here to be that DeLeon's spoliation of the evidence entitled him to a "spoliation presumption," or inference that the

7

missing evidence would have been unfavorable to DeLeon—here, a presumption that the roof was installed in a good and workmanlike manner. *See Brookshire*, 438 S.W.3d at 22 (discussing spoliation presumption as remedy).

First, assuming that DeLeon's destruction of the roof would constitute spoliation such that Lacey was entitled to the presumption, *see id.* at 20–21 (to be entitled to presumption, spoliator must have intentionally breached duty to preserve evidence with purpose to deprive non-spoliator), Lacey did not seek a spoliation presumption when he raised the issue to the district court; instead, he only asked that Pritchard's testimony be excluded. To that extent, this issue was not preserved. *See* Tex. R. App. P. 33.1(a)(1)(A) (requiring complaint state "the grounds for the ruling that the complaining party sought from the trial court"). But even if it had been preserved, presumptions and inferences are rebuttable, *see Trevino v. Ortega*, 969 S.W.2d 950, 960 (Tex. 1998) (Baker, J. concurring) (describing as "rebuttable presumption"), and both Pritchard's and Lacey's testimony were sufficient to overcome any inference the district court might have applied here.

To the extent that Lacey is, instead, challenging the district court's decision to deny his request to exclude Pritchard's testimony regarding the cause of the leak (again assuming that spoliation occurred), we cannot say that decision was an abuse of the district court's discretion. *See Brookshire*, 438 S.W.3d at 14 (noting trial court's broad discretion to impose *proportionate* spoliation remedy). "Key considerations for a trial court in imposing a spoliation remedy are the level of culpability of the spoliating party and the degree of prejudice, if any, suffered by the nonspoliating party." *Id.* There is no evidence in the record that DeLeon intentionally—i.e., deliberately with the purpose of depriving the nonspoliator of the evidence, *see id.* at 23–25—destroyed the roof. To the contrary, the evidence shows that DeLeon's purpose was, as

8

it had been for the past 18 months, to repair the leak that was causing damage to the interior of his home. For that reason, it seems unlikely that the destruction here would be considered even negligent, meaning there could be no spoliation finding. *See id.* (spoliation requires finding that destruction was at least negligent). Nevertheless, if we were to assume some negligence here, the "culpability" of that act (the repair of a leaking roof) on the scale the district court must consider when assessing a sanction would be negligible at best. Likewise small is the prejudice Lacey suffered, which he described as being unable to "conclusively prove[]" his case. On the other hand, Lacey had firsthand knowledge of the roof, having built it; Lacey had eight or nine opportunities to inspect the roof in the eighteen months before Bickel repaired it; Lacey made no requests in the course of formal discovery, or otherwise, to inspect the roof after he told DeLeon that the warranty period had expired; Lacey testified that he installed a "base sheet up the transition to the steep slope side" of the DeLeon roof and sealed it—i.e., he was able to contradict Pritchard's testimony regarding the construction; Lacey's focus at trial was on the other possible causes of leaks and his evidence that he installed the roof in a good and workmanlike manner; Lacey presented an expert witness who was able to testify on Lacey's behalf; and Lacey did not challenge Pritchard's testimony regarding the installation. Taking all these matters into consideration, as the district court would have had to do, we cannot say that the district court abused its discretion in refusing to exclude all evidence regarding the cause of the roof's leak, even if we assume spoliation by DeLeon. *See id.* at 21 (spoliation remedy "must have a direct relationship to the act of spoliation and may not be excessive").

We overrule Lacey's issue.

**DeLeon's appeal**

In his sole issue, DeLeon challenges the evidentiary sufficiency of the district court's finding that DeLeon failed to satisfy the presentment requirement to recover his attorney fees. *See* Tex. Civ. Prac. & Rem. Code § 38.002(2) (to recover attorney fees, claimant must present claim to opposing party). The purpose of the presentment requirement is to allow the party against whom a claim is asserted an opportunity to pay the claim or tender performance within 30 days after they have notice of the claim without incurring an obligation for attorney fees. *Jones v. Kelly*, 614 S.W.2d 95, 100 (Tex. 1981) (applying predecessor statute to suit for specific performance of written contract to sell property). "No particular form of presentment is required." *Id.* The term "presentment," as applied in section 38.002 is not defined in the Code; however, the supreme court has construed the word to mean simply a demand or request for payment or performance, whether written or oral. *See id.*; *see also Ferch v. Baschnagel*, No. 03-04-00605-CV, 2009 WL 349149, at *11 (Tex. App.—Austin Feb. 13, 2009, no pet.) (mem. op.) ("All that is necessary [for presentment] is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim." (citing *Standard Constructors, Inc. v. Chevron Chem. Co., Inc.*, 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.] 2003, pet. denied))).

DeLeon as claimant had the burden to plead and prove presentment of the claim. *Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983). Thus, to successfully challenge the legal sufficiency of an adverse finding (referred to as a "matter of law" point) on presentment, DeLeon must show that the evidence conclusively established presentment as a matter of law and that reasonable minds cannot differ. *Pike-Grant v. Grant*, 447 S.W.3d 884, 886 (Tex. 2014) (citing *City*

10

*of Keller*, 168 S.W.3d at 814–17; *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001)).[2]

To successfully challenge the factual sufficiency of that same finding, DeLeon must show, and the entire record must support, that "the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242.

According to DeLeon, he presented his claim to Lacey on two occasions. The first presentment occurred in a series of conversations with Lacey or Lacey's representative after Lacey's last failed attempt to repair the roof leak, and the second in a letter that Lacey sent to the Better Business Bureau, on which Lacey was copied. DeLeon's testimony regarding the conversations are as follows:

A.   Well, the last time they were there they told me that comfortably [sic] they had done the job. . . . . And I told him, if you—if you didn't, then I'm going to have to call another company to do it. And he asked me to call him if I did—if I was going to call somebody else.

When the next rain came the leak was still there, and then I called him and he didn't answer the phone. . . . . He told me when he returned my call—he said, you know, we have bad news for you. I said, what do you mean? He said, the two-year warranty is gone. The two-year warranty on the work that they did is gone. . . . . And they told me that if they were going to come to my house I had to pay—

Q:   Okay.

A:   —because the warranty was gone, warranty on the work that hasn't been done.

. . . .

---

[2] In reviewing a matter-of-law challenge, we first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). If there is no evidence to support the finding, we then examine the entire record to determine if the contrary position is established as a matter of law. *Id.*

11

A:.     . . . .  I told them that I was calling them to notify them that I was calling another company, that I didn't want them to come, in spite of which they sent two workers the following day.

Q.     Okay.

A.     When they show up, I told them I don't want you. I told them already that you were not going to be here anymore, I'm calling another company.

Q.     Okay.  So, they came out again before you hired this other company; is that correct?

A.     Yes.

Q.     Okay.  And you told them, leave—whatever you told them—you're not going to have them do the work.  Is that correct?

A.     That's right, because they don't know.


Lacey also testified about these conversations:


Q.     All right. What happened the final time that you spoke to Dr. DeLeon about the leak?

A.     I told—Mr. DeLeon and I talked on the phone.  And I told Mr. DeLeon, evidently, Mr. DeLeon, I cannot fix the roof.  I don't know what's wrong with it.  The warranty is over.  We've been out there several times, you know.  Let me know, you know—what it's going to cost and see.  But I changed my mind the next day.  I sent my crew out there.  I sent materials with them to tear their roof off and to put it back on right so we wouldn't have this problem anymore.

Q.     Okay. And what happened?

A.     Well, Mr. DeLeon send them home.  But I had called him and I left a message on his phone.  He wouldn't take my call.  I left a message on his phone, We're on our way back out there, I've changed my mind and I want to fix this leak, so I'm sending them with shingles and modified to his house.  And then, of course, you know what he did.  He turned them away and said no, and also, you know, told me that, you know, he was going to sue me the

12

> last time we talked. That was it. And I told him—I said, Well, I guess we are just going to let the lawyers sort it out.

DeLeon's letter to the Better Business Bureau, which was also sent to Lacey, was titled "Complaint against Colonial Roofing," states as follows:

> Dear Sirs,
>
> Attached, please find a copies of roof replacement documents and a complaint letter to the referenced roofing company dated October 10, 2009. The letter outlines the initial faulty roof installation and subsequent failures to repair the resulting leakage.
>
> The latest heavy rainfall, on June 29, 2010, disclosed that the latest attempt to repair the leak was also ineffective. I contacted the company again and was advised that the warranty had expired and that charges would be assessed for any subsequent repair attempts.
>
> Accordingly, I am having the roof repaired by a different company and have initiated legal action.

DeLeon argues that the above evidence conclusively established that he notified Lacey that "he intended to bring legal action against [Lacey] as the roof was not adequately repaired," but "instead of offering [to] pay the claim or make the necessary repairs," Lacey chose to sue DeLeon instead. We disagree. The evidence in the record supports the district court's finding that DeLeon failed to present his claim to Lacey.

The district court could have reasonably concluded from the evidence that, although DeLeon indicated that he intended to sue Lacey over the roof leak, DeLeon did not communicate to Lacey the object of his demand or request (either in terms of an amount or action)—i.e., a remedy—such that Lacey could have availed himself of the opportunity to pay or perform that the

13

presentment requirement is intended to give him. *See Jaster v. Comet II Const., Inc.*, 438 S.W.3d 556, 564–65 ("claim" is assertion of legal right to *payment or equitable remedy*) (Tex. 2014) (plurality op.); *Jones*, 614 S.W.2d at 100 ("presentment" simply means demand or request *for payment or performance*); *Ferch*, 2009 WL 349149, at *11 (claimant must show that its "assertion of a debt or claim *and a request for compliance* was made to the opposing party" (emphasis added)). Stated another way, although DeLeon may have made it clear that he wanted something from Lacey vis-á-vis the roof leak, he did not tell Lacey, in the conversations or the letter, what it was that he wanted. DeLeon asserts that Lacey refused to make the necessary repairs in light of the presentment, but the evidence conclusively establishes that DeLeon no longer wanted Lacey to attempt to fix the roof and that, when offered, flatly refused to allow Lacey to re-roof the house. DeLeon also argues that Lacey should have "paid the claim," but there is no evidence that, at the time of these alleged presentments, DeLeon had a repair estimate that he could have presented to Lacey.

Relatedly, it would have been reasonable for the district court to conclude from Lacey's testimony regarding these conversations that Lacey did not understand DeLeon to be making a demand or request at the time of their conversation or that, if he was, that there was no specific way to respond. In the first conversation, Lacey said, "I told Mr. DeLeon, evidently . . . I cannot fix the roof. I don't know what's wrong with it. The warranty is over. We've been out there several times, you know. Let me know, you know—*what it's going to cost and see*." (Emphasis added.) The district court could infer several possibilities from this statement: Lacey had not been told how much the repair would cost; DeLeon had not requested or demanded a specific payment, either in the form of an estimate or bill from Lacey, but that Lacey was open to paying for repairs; or Lacey thought at this point that there was still a possibility to resolve the matter. And Lacey's assertion, which

14

DeLeon acknowledges, that DeLeon rejected Lacey's offer to re-roof the house and told him that he was "going to sue," does not undermine that conclusion given that, again, there was no specific demand made on Lacey. In sum, there is some evidence in the record to support the district court's finding that DeLeon did not present his claim to Lacey. *See Dow Chem. Co.*, 46 S.W.3d at 241–42.

Similarly, viewing all the evidence in the record, we cannot conclude that the district court's finding is against the great weight and preponderance of the evidence. *See id.* at 241. Although DeLeon complained to Lacey about the leaks, warned him that he would hire another company to fix the leaks, and threatened to sue, he did not request or demand money or performance such that Lacey had the opportunity to avoid attorney fees. Accordingly, the district court's finding is supported by factually sufficient evidence. *See id.* at 241.

We overrule DeLeon's issue on appeal.

### Conclusion

Having overruled the parties' issues on appeal, we affirm the district court's judgment.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed: July 15, 2015

15