# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00605-CV

**Appellant, Danny L. Ferch//Cross-Appellant, William Baschnagel**

**v.**

**Appellees, William Baschnagel and The Insurance Network//
Cross-Appellee, Danny L. Ferch**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
## NO. GN300533, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Danny L. Ferch appeals a judgment rendered pursuant to a jury verdict in favor of William Baschnagel and The Insurance Network for damages resulting from Ferch's breach of their partnership agreement. Ferch brings three issues on appeal. He argues that the district court erred in denying his motion for instructed verdict based on his affirmative defense that the partnership agreement was illegal and therefore void. He also complains of error in the jury charge regarding the partnership-formation question and in permitting testimony regarding the issue of Baschnagel's attorney's fees. We will affirm the judgment.

## BACKGROUND

The jury heard testimony that in 1996 Baschnagel and Ferch orally agreed to form a partnership known as The Insurance Network ("TIN"). Baschnagel testified that the partnership with

Ferch would allow him to expand his existing occupational accident insurance business that he had begun in 1993. Baschnagel's business, the InsNet Group, sold life and health insurance, including some occupational accident insurance products. Baschnagel explained that because Ferch was licensed in property and casualty insurance, partnering with him would allow the business to include occupational accident products that had a property and casualty component.[1]

Baschnagel further testified that he had held a life and health insurance license since 1980, but that he did not acquire a property and casualty insurance license until 2003. Therefore, the parties agreed that Ferch would be in charge of the property and casualty lines of the partnership's business. According to Baschnagel, the property and casualty component of TIN's business was Ferch's "sole responsibility," and Baschnagel did nothing in connection with any of the products requiring a property and casualty insurance license. Likewise, Ferch testified that he conducted the "actual business and sales" of the property and casualty insurance product line, for which he received commission checks that he deposited into TIN's account, while Baschnagel's responsibilities included initially funding and setting up the business, providing office space and staffing, and managing its operations. Baschnagel testified that according to their agreement, he

---

[1] Baschnagel testified that some, but not all, occupational insurance products are "property and casualty" insurance products, while others are "life and health" insurance products. At all times relevant to this appeal, the insurance code distinguished between "life, accident, and health" insurance licenses and "property and casualty" insurance licenses. In 2001, the legislature reorganized the license structure into four basic license types: general life, accident, and health; limited life, accident, and health; general property and casualty; and limited property and casualty. *See* Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. S.B. 414, 77th Leg., R.S. (2001). Before that amendment, the department of insurance issued fifteen types of licenses, subdivided into 46 different categories. *See id.* For purposes of this opinion, we need only distinguish between the type of license that Baschnagel held from 1996 until 2003—a life and health license—and the type of license that Ferch held—a property and casualty license.

would recover his initial capital investment, and the two partners would then share the profits and losses of the business.

Baschnagel testified that pursuant to the partnership agreement, Ferch would make referrals to Baschnagel's life and health insurance business, while Baschnagel and his "marketing people," who were not licensed insurance agents, would refer potential clients for property and casualty products to Ferch.[2] The partnership's advertising materials described Ferch as an "occupational insurance specialist" and listed him as the contact person for "Property/Casualty products." During cross-examination, Baschnagel stated that TIN's advertising specified that for products requiring a property and casualty license, Ferch was "available to assist," and that he was the contact person for all property and casualty insurance products.

After several years in business together, relations between Baschnagel and Ferch began to deteriorate, culminating in the termination of the partnership in February 2003. Baschnagel filed suit for injunctive relief and damages, alleging that Ferch had breached the partnership agreement, as well as his duties of loyalty and care by usurping partnership assets and opportunities, competing with the partnership, and dealing with customers in a manner adverse to the partnership's interests. Baschnagel sought an accounting and damages resulting from Ferch's "excessive withdrawals" from the partnership account and willful failure to compensate Baschnagel for his share of the partnership business by withholding commissions that he had received on behalf of the partnership.

---

[2] On cross-examination, Baschnagel testified, "If the agent was interested in property and casualty, I would tell them that Dan [Ferch] was the guy to talk to, that he was the one that they needed to talk to."

Ferch answered and brought several counterclaims, including claims for declaratory and injunctive relief, fraud, breach of fiduciary duties, compensation for winding up of the partnership business, unjust enrichment, expulsion, and an accounting. One of Ferch's theories of recovery proposed that, if a partnership had indeed existed, the partnership agreement was void because neither Baschnagel nor TIN had obtained a property and casualty insurance license. According to Ferch, any alleged partnership agreement was for the purpose of "unlawfully sharing commissions among those not licensed to sell the insurance for which the commissions are payable" in violation of the insurance code. In addition to seeking declaratory relief on this issue, Ferch asserted illegality as an affirmative defense to all claims brought by Baschnagel and TIN.

The primary issue and the bulk of the evidence at trial concerned whether Baschnagel and Ferch had formed a partnership and, if so, whether either or both of the parties had breached the partnership agreement. After Baschnagel rested, Ferch moved for an instructed verdict on his affirmative defense, which the district court denied.[3] The jury returned a verdict finding that Baschnagel and Ferch agreed to create a partnership, that Ferch failed to comply with the agreement, and that his failure to comply was not excused.[4] The district court entered judgment on the jury verdict, awarding Baschnagel $273,143.99 in actual damages and $72,005.25 in attorney's fees. This appeal followed.

---

[3] The court did, however, grant Baschnagel and TIN's motion for instructed verdict with respect to Ferch's allegations of fraud, ordering that Ferch take nothing by his counterclaims of fraud and fraud in the inducement, and denying his affirmative defense of fraud. Ferch does not challenge these rulings on appeal.

[4] In questions five and six, the jury answered that Baschnagel also failed to comply with the agreement, but found that his failure was excused and that Ferch ratified the actions of Baschnagel.

4

## DISCUSSION

### *Instructed Verdict on Illegality*

In his first issue, Ferch complains of the denial of his motion for instructed verdict based on the affirmative defense of illegality. A court may instruct a verdict if no evidence of probative force raises a fact issue on the material questions in the suit. *Prudential Ins. Co. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994)). Because review of the denial of a motion for instructed verdict and of the legal sufficiency of the evidence involve the same legal-sufficiency standard of review, *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005), we construe the complaint involving the motion for instructed verdict as a challenge to the legal sufficiency of the evidence, *Solares v. Solares*, 232 S.W.3d 873, 878 (Tex. App.—Dallas 2007, no pet.).

A legal-sufficiency challenge on an issue on which an appellant bears the burden of proof requires the appellant to demonstrate that the evidence conclusively established all vital facts to support the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001); *see also Prudential Ins. Co.*, 29 S.W.3d at 77 (holding that trial court may direct verdict for defendant if plaintiff admits or evidence conclusively establishes defense to plaintiff's cause of action). Evidence is conclusive "only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *City of Keller*, 168 S.W.3d at 816. Therefore, a judgment contrary to a jury verdict is proper only when the law does not allow reasonable jurors to decide otherwise. *See id.* at 823.

In this case, the district court's denial of Ferch's motion for instructed verdict depended, in part, on its reading of the insurance code. Statutory construction is a legal question we review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). In construing statutes, we must ascertain and give effect to the legislature's intent as expressed by the language of the statute. *Id.* We use definitions prescribed by the legislature and any technical or particular meaning the words have acquired. Tex. Gov't Code Ann. § 311.011(b) (West 2005). Otherwise, we construe the statute's words according to their plain and common meaning, *Texas Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004), unless a contrary intention is apparent from the context, *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 189 (Tex. 1981), or unless such a construction leads to absurd results, *University of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004).

According to Ferch in his motion for instructed verdict, the partnership agreement was an illegal contract because it was an agreement "to engage in insurance business through an unlicensed partnership" in violation of former article 21.01 of the Texas Insurance Code. He also maintains that the agreement was illegal because it provided for the sharing of commissions that Ferch earned from the sale of property and casualty insurance policies with Baschnagel and TIN, who were "not properly licensed to sell the insurance for which the commissions are payable" as required by former article 21.07 of the code.[5]

---

[5] While briefed as a single issue, Ferch asserts that the agreement required two distinct statutory violations—the unlicensed practice of the business of insurance and the unlawful sharing of commissions. We will address each argument in turn.

Baschnagel responds that the partnership agreement violated neither of these provisions because he was at all times a licensed insurance agent. Acknowledging that the sharing of commissions with an unlicensed agent for services performed as an agent would be illegal, Baschnagel asserts that nowhere in the insurance code is it stated that an agent must be licensed in the *same line* of insurance as that for which he receives compensation. Baschnagel further argues that Ferch's reading of the insurance code would lead to absurd results, compelling a determination that the "fees received by any other providers of goods and services, including persons leasing office space, office equipment, vehicles, business consultants, clerical support, advertising, or any other professional services that could conceivably be characterized as aiding in the 'transaction of business of an insurance company'" are also illegal.

### Did the partnership agreement violate former article 21.01?

We first address whether Ferch was entitled to an instructed verdict on his affirmative defense of illegality by conclusively establishing that the partnership agreement violated former article 21.01 of the insurance code.[6] Under the version of former article 21.01 that was in effect at the time the partnership was created,

---

[6] The parties began their business arrangement before recodification of the insurance code was complete. *See* Act of June 21, 2003, 78th Leg., R.S., ch. 1274, § 27, Tex. Gen. Laws 4139, 4139 (noting that recodification was not intended to enact any substantive change in law). Because the insurance code has been reorganized considerably and the numbers of the current sections no longer correspond to the articles of the former, pre-recodification insurance code, we will refer to the relevant provisions as "Tex. Ins. Code former article [*x*]" for consistency with the parties' briefing.

It shall not be lawful for any person to act within this State, as an agent or otherwise, in soliciting or receiving applications for insurance of any kind whatever, or in any manner to aid in the transaction of the business of any insurance company incorporated in this State, or out of it, without first procuring a certificate of authority[7] from the Board.

Act of June 7, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, 1061 (amended 2001), *repealed by* Act of May 27, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4138, 4138 (Tex. Ins. Code former art. 21.01).  "Person," for purposes of former article 21, "means an individual or a general partnership composed of two or more individuals."  Act of May 24, 1995, 74th Leg., R.S., ch. 508, § 1, 1995 Tex. Gen. Laws 3247, 3247.  According to Ferch, Baschnagel as an individual and TIN as a general partnership entity violated this provision of the insurance code "by aiding in the transaction of the business of property and casualty insurance" when neither held a property and casualty insurance license.

While it is undisputed that Baschnagel held a valid life and health insurance license, Ferch insists that Baschnagel violated former article 21.01 because he did not also hold a property and casualty insurance license.  Former article 21.01 does not address, either expressly or by reference to other provisions, which line or lines of insurance a person must be licensed to sell. *See id.*  In fact, the provision does not distinguish between any of the various types of licenses that

_____

[7] Elsewhere in the insurance code at the time the parties entered into their agreement, this requirement is referred to as a "licensing requirement," *see, e.g.*, Act of May 25, 1979, 66th Leg., ch. 404, § 1, 1979 Tex. Gen. Laws 884, 884, and in 2001, article 21.01 was amended to require "a license or certificate of authority."  *See* Act of May 22, 2001, 77th Leg., R.S., ch. 703, § 1.01, Tex. Gen. Laws 1348, 1349.  Because we can discern no relevant difference between an insurance license and a certificate of authority as it pertains to the issues in this appeal, we will refer to the language of the amended version of the statute, as do the parties in their briefs.

8

an insurance agent may hold. *See* Senate Comm. on Bus. & Commerce, Bill Analysis, Tex. S.B. 414, 77th Leg., R.S. (2001) (noting that prior to 2001, department of insurance issued fifteen different types of licenses). Nonetheless, even if Ferch is correct that the statute imposes such a restriction, we hold that the evidence failed to conclusively establish that Baschnagel acted "as an agent" or otherwise aided in the transaction of the business of any insurance company in violation of former article 21.01. Both Ferch and Baschnagel testified that Ferch conducted the actual business and sales of property and casualty insurance products; according to Baschnagel, this component of TIN's business was Ferch's "sole responsibility." Contrary to Ferch's claim on appeal that Baschnagel "was involved in these insurance matters," Baschnagel testified that he did nothing in connection with any of the products requiring a property and casualty insurance license. Because jurors are the sole judge of the credibility of the witnesses and the weight to give their testimony, *City of Keller*, 168 S.W.3d at 819, such conflicts in the evidence must be resolved by the factfinder, *see id.* at 823, and the existence of a material fact issue precludes the granting of a motion for instructed verdict, *see Prudential Ins. Co.*, 29 S.W.3d at 77.

Even more importantly, Ferch has not established that the *partnership agreement* required Baschnagel to violate former article 21.01. In order to prevail on his claim that the agreement was an illegal contract and therefore void as a matter of law, Ferch had to prove that the terms of the agreement required the parties "to do a thing that cannot be performed without a violation of the law." *Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947); *Villanueva v. Gonzalez*, 123 S.W.3d 461, 464 (Tex. App.—San Antonio 2003, no pet.). In Ferch's view, by promoting, advertising, and marketing the sale of occupational accident insurance products, Baschnagel acted

9

beyond the scope of his authorization as a health and life insurance license holder. Even if this is true, however, Ferch has not argued—and we find no evidence suggesting—that Baschnagel did so because it was required *by the agreement*.[8] Ferch did not satisfy his burden of conclusively establishing that the partnership agreement required any violation of former article 21.01 of the insurance code. Thus, he has not shown that he was entitled to an instructed verdict on the basis that the agreement was an illegal contract. *See Prudential Ins. Co.*, 29 S.W.3d at 77.

The same problem affects Ferch's argument with respect to TIN as a partnership entity. He asserts that TIN violated former article 21.01 because it did not procure a license or certificate of authority from the department of insurance; thus, he argues, because TIN could not have lawfully engaged in the sale of insurance, any agreement for the purpose of selling insurance was illegal. Assuming without deciding that the insurance code required the partnership to become licensed, Ferch has not established that the partnership agreement required any prohibited conduct by the partnership.

To prevail on his claim, Ferch must demonstrate that the evidence conclusively established that the partnership agreement required TIN to act as an insurance agent or to aid in the transaction of the business of an insurance company. *See Dow Chem. Co.*, 46 S.W.3d at 241. As a preliminary matter, we note that former article 21.01 prohibited unlicensed persons from aiding in the transaction of the business of an insurance company, not from engaging in "the business of

---

[8] Furthermore, there is conflicting evidence as to whether the occupational accident insurance products at issue were products that required the seller to hold a property and casualty insurance license; presumably, Baschnagel would be permitted to act as an agent with respect to any occupational accident products that were life and health insurance products.

10

insurance," as Ferch suggests. *See* Tex. Ins. Code former art. 21.01.[9] Ferch asserts without support

that the agreement was to engage in the insurance business through an unlicensed partnership. On

the contrary, there was evidence that the partnership was devised as a way for the two agents to pool

resources and share profits, allowing each partner to independently conduct the business for which

he was licensed while referring potential customers to one another in their respective product lines.

The record before us does not support Ferch's claim that the partnership agreement was a contract

that could not be performed without violating the insurance code. *See Lewis*, 199 S.W.2d at 148-49;

*Villanueva*, 123 S.W.3d at 464. We hold that Ferch did not conclusively establish that he was

entitled to an instructed verdict on the basis that the partnership agreement violated former article

21.01 of the insurance code.

### *Did the partnership agreement violate former article 21.07?*

Ferch also argues that the partnership agreement violated former article 21.07 of the

insurance code by requiring the unauthorized sharing of commissions. Under former article 21.07,

> No insurer or licensed insurance agent doing business in this State shall pay directly
> or indirectly any commission, or other valuable consideration, to any person or
> corporation for services as an insurance agent within this State, unless such person
> or corporation shall hold a currently valid license to act as an insurance agent as

---

[9] As other courts have noted, this renders former article 21.01 completely inapplicable to
cases involving agents and brokers who do not contract with clients to pay claims themselves, given
that "insurance company" is specifically defined in the insurance code to mean those agencies "doing
business under any charter involving the payment of any amount of money, or any other thing of
value conditioned upon the occurrence of some covered loss." *See Solomon v. Greenblatt*,
812 S.W.2d 7, 12 (Tex. App.—Dallas 1991, no writ).

11

required by the laws of this State; nor shall any person or corporation other than a duly licensed insurance agent, accept any such commission or other valuable consideration . . . .

Act of May 25, 1979, 66th Leg., ch. 404, § 1, 1979 Tex. Gen. Laws 884, 885.

In light of this prohibition, Ferch argues that any agreement for him to share with Baschnagel or TIN his commissions earned from the sale of property and casualty insurance products was illegal. In support of his position, he cites the clearly established principle that, under Texas law, unlicensed persons and corporations may not receive commission splits or any other monetary compensation for performing services that require an insurance license. *See Benefits Admin. Corp. v. Rearick*, 705 S.W.2d 234, 235-36 (Tex. App.—Texarkana 1986, no writ); *Armstrong v. Tidelands Life Ins. Cos.*, 466 S.W.2d 407, 409 (Tex. Civ. App.—Corpus Christi 1971, no writ); *Perkins v. Lambert*, 325 S.W.2d 436, 438-39 (Tex. Civ. App.—Austin 1959, writ dism'd). He also relies on *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682 (Tex. App.—Houston [1st Dist.] 2003, no pet.), a case involving a temporary injunction entered against the licensed insurance agent of an unlicensed insurance company, compelling the agent to remit his commissions and endorse his commission checks to the unlicensed company. *Id.* at 694. The court in *Ahmed* held that the temporary injunction order required illegal acts in violation of former article 21.07 of the insurance code and vacated those portions of the order.[10] *Id.*

---

[10] In its opinion, the First Court of Appeals referred to the then-current version of this provision, codified at article 21.01-2, § 2A. *See* Act of May 18, 2001, 77th Leg., R.S., ch. 703, §§ 1.04, 10.01, 2001 Tex. Gen. Laws 1348, 1401.

12

We disagree with Ferch's contention that the facts of the instant case are practically indistinguishable from those in *Ahmed*. In that case, there was no dispute that (1) the corporation to which Ahmed was ordered to remit his commissions was unlicensed, and (2) the temporary injunction order required the corporation to receive compensation for services it performed as an insurance agent. It is undisputed in this case that Baschnagel held a valid license to act as an insurance agent. As we noted with respect to former article 21.01, nothing in the plain language of former article 21.07 requires that Baschnagel hold a license in property and casualty insurance to be eligible to share in commissions earned from the sale of property and casualty insurance. *See* Tex. Ins. Code former art. 21.07 (requiring that person who acts as agent hold "a currently valid license"). Moreover, even with respect to TIN, the unlicensed partnership entity, Ferch has not established a violation of former article 21.07. The statute prohibits only the compensation of an unlicensed entity for performing services "as an insurance agent." *See id.* former art. 21.07. As the Dallas Court of Appeals explained in *Solomon v. Greenblatt*, 812 S.W.2d 7 (Tex. App.—Dallas 1991, no writ),

> When construed according to its ordinary terms, Texas Insurance Code article 21.07, section 1(b) does not prohibit in all circumstances the payment of money from insurance commissions to unlicensed persons or corporations. The statute prohibits paying unlicensed persons or entities for services *as an insurance agent*. Article 21.02 specifies in detail the services of an insurance agent. Consistent with article 21.07, section 1(b), an insurance agent may pay income from commissions to unlicensed persons as compensation for services not listed in article 21.02. The critical question for determining the legality under the Texas Insurance Code of a commission splitting arrangement is the nature of the services performed by the unlicensed person or corporation. Article 21.07, section 1(b) exists to forestall the unlicensed practice of insurance by prohibiting the payment of unlicensed persons for insurance services.

13

*Id.* at 14 (emphasis added). One of the agreements at issue in *Solomon* was a contract between a licensed insurance agent and a consultant who coached the agent in selling techniques and time management skills, entitling the consultant to a percentage of the agent's "net insurance income." *Id.* at 9. The trial court declared this an invalid commission-splitting agreement in violation of former article 21.07 and awarded summary judgment in favor of the agent. *Id.* at 10. Reversing, the court of appeals held that the insurance code "does not regulate the manner in which insurance agents may pay unlicensed persons for services not covered by the insurance agent licensing statute," *id.* at 20, which is contained in former article 21.02, *see* Act of June 7, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, 1061 (amended 2001), *repealed by* Act of May 27, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4138, 4138 (Tex. Ins. Code former art. 21.02).[11]

---

[11] At all times relevant to this appeal, the insurance code read as follows:

Art. 21.02. Who Are Agents

Any person who solicits insurance on behalf of any insurance company, whether incorporated under the laws of this or any other states or foreign government, or who takes or transmits other than for himself any application for insurance or any policy of insurance to or from such company, or who advertises or otherwise gives notice that he will receive or transmit the same, or who shall receive or deliver a policy of insurance of any such company, or who shall examine or inspect any risk, or receive, or collect, or transmit any premium of insurance, or make or forward any diagram of any building or buildings, or do or perform any other act or thing in the making or consummating of any contract of insurance for or with any such insurance company other than for himself, or who shall examine into, or adjust, or aid in adjusting, any loss for or on behalf of any such insurance company, whether any of such acts shall be done at the instance or request, or by the employment of such insurance company, or of, or by, any broker or other person, shall be held to be the agent of the company for which the act is done, or the risk is taken, as far as relates to all the liabilities, duties, requirements and penalties set forth in this chapter. . . .

Similarly, in this case, the evidence does not support a conclusion that the parties' oral agreement required TIN to perform the services specified in former article 21.02. Ferch asserts generally that the partnership was formed in order to sell property and casualty insurance; he does not identify what "services," if any, TIN performed pursuant to the agreement. From our own review of the record, we find no evidence or, at best, conflicting evidence concerning whether the parties agreed that TIN would act as an insurance agent—*i.e.*, that it would take or transmit any insurance application or policy; advertise or otherwise give notice that it would receive or transmit the same; receive or deliver a policy of insurance; examine or inspect any risk; receive, collect, or transmit any premium of insurance; make or forward any diagram of any building or buildings; do or perform any other act or thing in the making or consummating of any contract of insurance; or examine into, or adjust, or aid in adjusting, any loss for or on behalf of any insurance company. *See id.* Because the evidence did not conclusively establish that the contract violated former article 21.07 of the insurance code, Ferch was not entitled to an instructed verdict on his affirmative defense of illegality. *See Prudential Ins. Co.*, 29 S.W.3d at 77. We overrule Ferch's first issue.

---

Act of June 7, 1951, 52nd Leg., R.S., ch. 491, 1951 Tex. Gen. Laws 868, 1061 (amended 2001), *repealed by* Act of May 27, 2003, 78th Leg., R.S., ch. 1274, § 26(a)(1), 2003 Tex. Gen. Laws 4138, 4138.

In 2001, former article 21.02 was amended to add the following provision: "The referral by an unlicensed person of a customer or potential customer to a licensed insurance agent is not an act of an agent under this article, unless the unlicensed person discusses specific insurance policy terms or conditions with the customer or potential customer." Act of May 22, 2001, 77th Leg., R.S., ch. 703, § 1.07, Tex. Gen. Laws 1348, 1357.

15

***Jury Charge***

In his second issue, Ferch argues that the district court "erred in the submission of Jury Charge No. 1 regarding the formation of a partnership according to the Texas Revised Partnership Act." He further argues that the error was harmful because the improper question "controlled the remainder of the findings of the jury."

Texas Rule of Civil Procedure 277 states that "the court shall submit instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. Though a trial court must explain legal or technical terms, it has wide discretion to determine the sufficiency of such explanations. *M.N. Dannenbaum, Inc. v. Brummerhop*, 840 S.W.2d 624, 631 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Thus, so long as the charge is legally correct, we review a trial court's decision to submit or not to submit jury instructions under an abuse-of-discretion standard. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex. 1999). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *Low v. Henry*, 221 S.W.3d 609, 619-20 (Tex. 2007). In addition, to reverse a judgment based on a claimed error in the jury charge, a party also must show that the error "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1); *see Union Pac. R.R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002).

In this case, the jury affirmatively answered Question No. 1 of the jury charge, which asked:

Did Danny L. Ferch and William Baschnagel agree to create a partnership?

You are instructed that a partnership agreement may be written or oral.

16

You are instructed that an agreement to share losses by the owners of a business is not necessary to create a partnership.

You are instructed that a representation or other conduct indicating that a person is a partner with another person, if that is not the case, does not of itself create a partnership. You are also instructed that an association of two or more persons to carry on a business for profit as owners creates a partnership, whether the persons intend to create a partnership and whether the association is called a "partnership," "joint venture," or other name.

Consider the following factors indicating the creation of a partnership. Factors indicating that persons have created a partnership include their:

(1) receipt or right to receive a share of profits of the business;
(2) expression of an intent to be partners in the business;
(3) participation or right to participate in control of the business;
(4) sharing or agreeing to share:
    (A) losses of the business; or
    (B) liability for claims by third parties against the business; and
(5) contributing or agreeing to contribute money or property to the business.

Ferch lodged a timely objection, arguing that "the language 'agreed to create a partnership' . . . is not necessary" because under the Texas Revised Partnership Act, "the formation of a partnership includes an expression of intent to be partners and as such 'agreed to create a partnership' presupposes one of the elements in the primary question." He submitted a version of the question asking whether Baschnagel and Ferch *formed* a partnership, as opposed to whether they *agreed* to form a partnership, which the trial court refused. On appeal, he characterizes his argument as a challenge to the legal correctness of the charge submitted, urging that we review the issue de novo. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 525 (Tex. 2002) (holding that issue of whether jury charge misstates law is legal question we review de novo); *but see Ford Motor Co. v. Ledesma*,

17

242 S.W.3d 32, 41 (Tex. 2008) (noting that legal-correctness error was preserved upon objection that PJC definitions were "not accurate under the law" and failed to track supreme court's precedent).

At trial, Ferch objected that the court's instruction was "not necessary" and superfluous under the Texas Revised Partnership Act (the "Act"). He did not specifically raise the issue that the instruction was legally incorrect. Assuming without deciding that the legal-correctness complaint was preserved, we conclude that the submitted instruction was a legally correct statement of the law concerning the existence of an oral agreement, the primary dispute at trial. It is well established that, "even if an offer and acceptance are not recorded on paper, dealings between parties may result in an implied contract where the facts show that the minds of the parties met on the terms of the contract without any legally expressed agreement." *Ishin Speed Sport, Inc. v. Rutherford*, 933 S.W.2d 343, 348 (Tex. App.—Fort Worth 1996, no writ) (citing *Smith v. Renz*, 840 S.W.2d 702, 704 (Tex. App.—Corpus Christi 1992, writ denied); *City of Houston v. First City*, 827 S.W.2d 462, 473 (Tex. App.—Houston [1st Dist.] 1992, writ denied)). Therefore, because the jury was required to determine if there was a "meeting of the minds" in order for Baschnagel to recover on his breach of contract claim, it was *necessary* for the jury to determine whether Baschnagel and Ferch had agreed to form a partnership. *See, e.g.*, *Prime Products, Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (holding that dispositive issue in determining whether contract exists is intent of parties to be bound, without which there can be no contract upon which to base breach of contract action); *Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 689 (Tex. App.—San Antonio 2002, pet. denied) (same).

18

It is clear from his brief on appeal, however, that Ferch's main complaint about the jury charge is that it gave disproportionate weight to a single factor—the parties' intent to form a partnership—in the multi-factor analysis set forth under the Act. *See* Tex. Rev. Civ. Stat. Ann. art. 6132b-2.03 (West Supp. 2008). Again assuming without deciding that Ferch preserved his disproportionate-weight complaint, *see* Tex. R. Civ. P. 274, we hold that the submitted instruction was substantially correct.

Under the Act, "an association of two or more persons to carry on a business for profit as owners creates a partnership, whether the persons intend to create a partnership and whether the association is called a 'partnership,' 'joint venture,' or other name." Tex. Rev. Civ. Stat. Ann. art. 6132b-2.02(a) (West Supp. 2008). The Act further provides:

> (a)    Factors Indicating Creation of Partnership. Factors indicating that persons have created a partnership include their:
>
> (1) receipt or right to receive a share of profits of the business;
>
> (2) expression of an intent to be partners in the business;
>
> (3) participation or right to participate in control of the business;
>
> (4) sharing or agreeing to share:
>
> > (A) losses of the business; or
> >
> > (B) liability for claims by third parties against the business; and
>
> (5) contributing or agreeing to contribute money or property to the business.

*Id.* art. 6132b-2.03(a). Thus, the Act lists precisely the same factors that indicate whether a partnership has been created as those listed in the accompanying instruction in the court's charge.

19

The Act, by its plain language, dictates that a partnership is created when two or more persons associate to carry on a business for profit. *See id.* art. 6132b-2.02(a). The question submitted by the trial court, asking whether the parties agreed to create a partnership, is merely another way of framing the issue as it is defined by the Act—whether the parties have come together with the intent to carry on a business for profit and the requisite indications of agreement. We can discern no meaningful inconsistency between the statute and the court's charge and hold that this instruction was a substantially correct submission of the issue of whether Baschnagel and Ferch created a partnership.

Because the submitted instruction was legally correct, we ask only whether the district court abused its discretion in refusing Ferch's version of the partnership-formation question. In submitting the issue of the existence of an agreement between the parties, the trial court followed Texas Pattern Jury Charge (PJC) 101.1. *See* Comm. On Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges—Business, Consumer, Insurance, Employment PJC 101.1 (2003). As the comment to the PJC explains, this question submits the issue in a breach of contract action of whether an agreement exists, particularly in cases such as this involving oral contracts or oral modifications of contracts. The record does not reflect that the district court acted without reference to any guiding rules or principles; therefore, we find no abuse of discretion. *See Low*, 221 S.W.3d at 619-20. Furthermore, Ferch has not shown how the alleged error in the jury charge probably resulted in the imposition of an improper verdict. *See* Tex. R. App. P. 44.1(a)(1). We overrule Ferch's second issue.

20

*Attorney's Fees*

In his third issue, Ferch argues that because Baschnagel did not properly present his claim for breach of contract under Chapter 38 of the Texas Civil Practice and Remedies Code, he was not entitled to present evidence on the issue of attorney's fees on that claim. At trial, Ferch timely objected to Baschnagel's counsel's testimony on attorney's fees, arguing that presentment had not been made as a predicate to Baschnagel's recovery of attorney's fees or, in the alternative, that the presentment of Baschnagel's claim was deficient because it was oral rather than written and because Baschnagel never provided a sum certain claim. Therefore, Ferch asserts that because this testimony should not have been admitted, there is no evidence to support the award of attorney's fees to Baschnagel. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See State v. Bristol Hotel Asset Co.*, 65 S.W.3d 638, 647 (Tex. 2001).

Section 38.001 provides that a person may recover reasonable attorney's fees on a claim based on an oral or written contract. Tex. Civ. Prac. & Rem. Code Ann. § 38.001(8) (West 2008). To recover attorney's fees under section 38.002, the claimant must comply with the following requirements: (1) the claimant must be represented by an attorney; (2) the claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party; and (3) payment for the just amount owed must not have been tendered within thirty days of presentment. *Id.* Presentment of the claim is required to provide the other party with an opportunity to pay the claim before incurring an obligation for attorney's fees. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006) (citing *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981)). No particular form of presentment is required. *France v. American Indem. Co.*, 648 S.W.2d 283, 286

21

(Tex. 1983). All that is necessary is that a party show that its assertion of a debt or claim and a request for compliance was made to the opposing party, and the opposing party refused to pay the claim. *Standard Constructors, Inc. v. Chevron Chem. Co., Inc.*, 101 S.W.3d 619, 627 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

It is the claimant's burden to plead and prove presentment. *See Ellis v. Waldrop*, 656 S.W.2d 902, 905 (Tex. 1983). When a claimant avers in his petition that all conditions precedent to recovery have occurred or have been performed, he is required to prove only those conditions precedent that have specifically been denied by the opposing party. *See* Tex. R. Civ. P. 54 ("[I]t shall be sufficient to aver generally that all conditions precedent have been performed," and party so pleading "shall be required to prove only such of them as are specifically denied by the opposite party."). Baschnagel's First Amended Original Petition For Injunction and Damages, under the heading Breach of Agreement, states, "All conditions precedent required to be performed by William Baschnagel were performed or have occurred as he understood the same to have been required." Ferch, in his second amended original answer, did not specifically deny that Baschnagel had failed to present its breach of contract claim as required by statute. Therefore, as Baschnagel points out, any complaint stemming from the failure to make presentment has been waived. *See Gill Sav. Assn. v. International Supply Co., Inc.*, 759 S.W.2d 697, 701 (Tex. App.—Dallas 1988, writ denied); *Sunbelt Constr. Corp. v. S & D Mech Contractors, Inc.*, 668 S.W.2d 415, 417-18 (Tex. App.—Corpus Christi 1983, writ ref'd n.r.e.).

In any event, the record reflects that Baschnagel did present his claim to Ferch. At trial, the following colloquy took place following Ferch's objection:

22

The Court:          Did y'all go to mediation?

[Counsel for Ferch]:   Yes, Your Honor.

The Court:          Did you sit in mediation and not talk numbers? I mean, you're saying you have no notice that they want money from you, and you have no notice of how much money they want from you until now? Is that really the position you're taking?

Counsel:            It is, Your Honor.

The Court:          You're telling me that in mediation there was no meaningful discussion of what it would take to satisfy the plaintiff?

Counsel:            Well, we had a demand at mediation, but I don't think mediation comports with the presentation.

Subsequently, counsel for Baschnagel testified that he orally presented the claim for breach of the partnership agreement. He stated:

I told [Ferch's attorney] Mr. Young that Mr. Baschnagel believed that Mr. Ferch was wrongfully leaving the business arrangement, that he was taking all of what Mr. Baschnagel believed to be partnership assets, that he didn't have a right to do that, and I explained to Mr. Young that what Mr. Ferch should have done was sat down and discussed how to buy out Mr. Baschnagel's interest, and made that request of Mr. Young to discuss with his client that possibility.

In a subsequent conversation with Mr. Young, I was informed that Mr. Ferch did not completely agree that, in fact, there was a partnership . . . . And I remember going over financials and looking at some financials that he had sent to me with Mr. Ferch and just trying to explain the differences we had and explaining why Billy [Baschnagel] believed that Billy was entitled to more money. And Mr. Young said, "Well, we have a disagreement."

Although Ferch objected to testimony concerning reasonable attorney's fees, he did not object to this testimony from Baschnagel's attorney that he had orally presented the claim.

23

Likewise, Ferch's attorney's statements that the demand had been made at mediation were also before the court. Oral presentment of a claim is sufficient to satisfy the presentment requirement; it is not necessary for a party to present a claim in writing. *Jones*, 614 S.W.2d at 100. Nor is there a requirement that the presentment include any mention of a sum or amount owing, contrary to Ferch's assertion on appeal. *See, e.g.*, *Stewart Title Guar. Co. v. Aiello*, 911 S.W.2d 463, 474 (Tex. App.—El Paso 1995), *aff'd in part*, 941 S.W.2d 68 (Tex. 1997); *Arch Constr., Inc. v. Tyburec*, 730 S.W.2d 47, 50 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Thus, on this record, we find no abuse of discretion in admitting evidence concerning attorney's fees because the trial court could have reasonably determined that Baschnagel's breach of contract claim had been orally presented. We overrule Ferch's third issue.

## CONCLUSION

Having overruled each of Ferch's issues, we need not address Baschnagel and TIN's conditional cross-issues. We affirm the judgment of the district court.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Patterson and Puryear

Affirmed

Filed: February 13, 2009