**Affirmed and Memorandum Opinion filed May 10, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00905-CV

**COLORADO COUNTY OIL COMPANY, INC., DAY & NIGHT, INC., AND SNP BUSINESS, INC., Appellants**

**V.**

**STAR TEX DISTRIBUTORS, INC., Appellee**

**On Appeal from the 281st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-43621**

## M E M O R A N D U M   O P I N I O N

Day & Night, Inc., SNP Business, Inc., and Colorado County Oil Company, Inc. appeal from a final judgment awarding damages to Star Tex Distributors, Inc. in connection with a commercial dispute involving gasoline sales to a convenience store. We affirm the trial court's judgment.

**BACKGROUND**

Star Tex and Colorado County are competing "jobbers" that distribute gasoline. Both purchase gasoline from refiners for sale to gas stations and convenience stores; these retailers resell the gasoline to motorists under various brand names including Shell, Citgo, Valero, and Chevron. Star Tex contends it had an exclusive contract in place to supply gasoline from April 2011 through April 2012 to a Houston convenience store located at 10103 Bammel North Houston Road. Colorado County contends it had the contractual right to supply gasoline at the same location after the convenience store voluntarily switched distributors.

## I.    The Star Tex Contract

Star Tex supplied gasoline to the convenience store from April 2001 until May 2011. Star Tex entered a Dealer Franchise Agreement for this location with Day & Night on November 20, 2000. Day & Night owned the convenience store and the real property on which the store was located.

Pursuant to the Dealer Franchise Agreement, Star Tex agreed to sell and Day & Night as "Dealer" agreed to buy 60,000 gallons of Citgo-branded gasoline per month for 10 years. The agreement became effective in April 2001 when Day & Night began retail sales of gasoline supplied by Star Tex. After the initial 10-year term, the contract automatically renewed on a year-to-year basis unless terminated.

Under "DUTIES AND OBLIGATIONS OF DEALER," paragraph 3(H)(14) of the agreement states as follows: "Dealer agrees to purchase all gasoline and diesel fuel from Star Tex for the term of this Agreement." Paragraph 18, entitled "AMENDMENT," states as follows: "This Agreement can only be amended by an agreement in writing which is [signed] . . . by both parties." Paragraph 21, entitled

2

"BINDING EFFECT," states as follows: "This Agreement extend[s] to any party buying, purchasing, leasing, renting or otherwise having control of the branded outlet so long as this Agreement is in effect."

Day & Night's president, Nizar Ali, signed the agreement. The convenience store's operations were managed from 2001 until 2009 by Nizar Ali's cousin, Shokat Ali, who was a Day & Night employee.[1] Shokat Ali created and became president of a separate entity, SNP, in 2009. According to Shokat Ali, Day & Night leased the convenience store to SNP on May 1, 2009, while continuing to own the real property.

Shokat Ali purchased Nizar Ali's shares of Day & Night in 2011 and became that entity's president, secretary, and director. Shokat Ali testified that he became responsible for Day & Night's liabilities and contracts based on this transaction. Shokat Ali simultaneously served as SNP's president. Both entities operated the convenience store under the d/b/a "Dee Best." Star Tex Vice President Feroz Momin testified that Star Tex did not learn of SNP's creation, the 2009 SNP lease, or Shokat Ali's 2011 purchase of Day & Night's shares until after litigation began.

According to Momin, Star Tex dealt primarily with Shokat Ali; Momin thought Shokat Ali was Nizar Ali's partner in the convenience store. Shokat Ali characterized his cousin Nizar Ali as an absentee landlord.

The Dealer Franchise Agreement specified that Star Tex would provide Citgo-branded gasoline to Day & Night, but Star Tex did not do so. A December 8, 2000 letter from Momin to Nizar Ali states as follows: "As per our telephone conversation, we are going to brand your location to Phillips, instead of Citgo.

---

[1] His name appears in the record as both "Shokat" and "Shoukat."

3

Agreement we have [signed] dated November 20, 2000 will remain the same; however effective date of the agreement may change to somewhere March or April 2001 or upon completion of Phillips Branding." Nizar Ali testified that he never received this letter.

Momin testified that Nizar Ali asked to switch to Phillips-branded gasoline within two or three weeks after signing the Dealer Franchise Agreement, and Star Tex complied with his request. Nizar Ali testified that Star Tex initiated the brand change to Phillips without his request or agreement. According to Nizar Ali, he acquiesced only because the brand change was announced shortly before the convenience store was to begin operations and he wanted to avoid delay; furthermore, Nizar Ali testified that Star Tex said the brand would be changed to Citgo within two years. On direct examination, Nizar Ali testified that he preferred Citgo to Phillips because "Citgo is a better brand than Phillips." Nizar Ali was asked this question during cross-examination: "So really at the end of the day, you know, 2004, 2005, 2006, you didn't really care whether or not it was branded Phillips, Chevron, or Citgo so long as it was making money and sending it over to you; isn't that right?" He answered: "Right."

Day & Night never signed a written amendment agreeing to accept Phillips-branded gasoline from Star Tex. After the 2002 merger of Conoco Inc. and Phillips Petroleum Co., Star Tex paid the expenses necessary to change the convenience store's signage to read "ConocoPhillips." The convenience store never was branded as a Citgo retail outlet.

Momin testified that Day & Night accepted Star Tex's gasoline deliveries under the Dealer Franchise Agreement for 10 years without complaint about the brand designation. Shokat Ali testified that Nizar Ali never complained to him about the Phillips branding. Shokat Ali also testified that he encountered repeated

4

problems with Star Tex's service including overcharges, shorted gasoline deliveries, and deliveries of other gasoline brands at higher prices. Momin testified that he received no complaints from Nizar Ali or Shokat Ali regarding the quality of Star Tex's services.

Upon completion of the initial 10-year term in April 2011, Star Tex contends the Dealer Franchise Agreement automatically renewed for another year and continued in effect until April 2012. A dispute arose in May 2011 when gasoline purchases from Star Tex ceased and Colorado County began supplying Valero-branded gasoline to the same convenience store location under a different contract.

## II.    The Colorado County Contract

Colorado County began negotiating with Shokat Ali in December 2010 about switching gasoline distributors and rebranding the convenience store. Colorado County and "SNP Business, Inc., Shoukat Najar Ali, President and d/b/a/ Dee Best Food Mart" entered into a 10-year Branded Supply Contract on January 25, 2011.

The Branded Supply Contract identified Colorado County as "Seller" and SNP as "Buyer." This contract obligated SNP to buy Valero-branded gasoline from Colorado County for the same convenience store Star Tex had supplied since 2001. Colorado County agreed to pay a $50,000 "signing bonus" to SNP in connection with this contract.

According to Shokat Ali, in January 2011, Nizar Ali told him that no prior gasoline distribution contract was in place for the convenience store. In turn, Shokat Ali testified that he told Star Tex's representative "this location has no contract."

Momin visited the convenience story in February 2011 after hearing rumors

5

it was changing gasoline brands. According to Momin, Shokat Ali denied any plans to change brands. Shokat Ali testified that he did not recall such a visit or discussion with Momin.

Shokat Ali's son, Sohail Ali, assisted his father in managing the convenience store on Bammel North Houston Road. According to Sohail Ali's testimony, he called Star Tex in April or May 2011 to notify it that (1) the convenience store was switching to Valero-branded gas, and (2) Star Tex needed to take down the Phillips signage. Shokat Ali testified that he never provided a notice to Star Tex terminating the Dealer Franchise Agreement and, to his knowledge, no one else did either.

Star Tex's last delivery occurred on May 4, 2011. Momin testified that he discovered the change when he visited the convenience store on May 5 or 6 and saw Valero signage in place. Colorado County began delivering Valero-branded gasoline to the convenience store on May 8, 2011.

Star Tex called Colorado County soon after discovering the change and left a message requesting a return call. After receiving no response, Star Tex sent an email to Colorado County on May 12 asserting that Colorado County was "interfer[ing with] . . . our agreement with" the convenience store. This email was followed by a May 13 letter signed by Momin and including a copy of the Franchise Dealer Agreement between Star Tex and Day & Night. Momin's letter asserts that Colorado County's actions in supplying gasoline to the convenience store constituted "interference of [c]ontractual and financial obligations." The letter states: "We urge you to [s]top supplying products to [the] above-referenced location." The letter continues: "[W]e are requesting you to transfer this facility over to Star Tex Distributors, Inc. and Star Tex will reimburse the cost involved in converting this facility to Valero." Star Tex also distributes Valero-branded

6

gasoline.

Another letter to Colorado County from Star Tex's attorney followed on May 18. Colorado County responded with a May 31 letter from its attorney denying any interference with the Dealer Franchise Agreement and stating: "Day & Night approached CCOC and requested that it convert the facility to Valero and supply it with Valero branded fuel." Additional correspondence ensued.

## III. Court Proceedings

Star Tex filed suit in 2012. In its First Amended Original Petition filed in 2014, Star Tex asserted breach of contract claims against Day & Night and SNP; it also asserted claims for tortious interference with existing and prospective contractual relations against Colorado County and SNP. In addition to damages and other relief, Star Tex sought attorney's fees under Chapter 38 of the Civil Practice & Remedies Code. Day & Night and SNP filed an answer and counterclaims against Star Tex for breach of the Dealer Franchise Agreement; the counterclaims were nonsuited during trial.

The case was tried to a jury resulting in a 10-2 verdict. The jury answered the submitted questions as follows.

- The jury answered "yes" to Question No. 1, which asked: "Did Day & Night violate the Dealer Franchise Agreement?"

- In response to Question No. 2, which was predicated on a "yes" answer to Question No. 1, the jury found that Day & Night's failure to comply with the Dealer Franchise Agreement resulted in damages of $10,700 to Star Tex for "Reimbursements to Refiner."

- The jury answered "yes" to Question No. 3, which asked: "Did SNP Business Inc. violate the Dealer Franchise Agreement?" In response

7

to Question No. 4, the jury awarded zero damages for this breach.

- In response to Question No. 5, the jury awarded $25,699.59 as a reasonable fee for necessary services of Star Tex's attorneys in the trial court, and $5,000 for representation in the court of appeals.

- The jury answered "yes" to Question No. 6, which asked: "Did CCOC intentionally interfere with the Dealer Franchise Agreement?" The jury was instructed: "Interference is intentional if committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result."

- In response to Question No. 7, which was predicated on a "yes" answer to Question No. 6, the jury found that Colorado County's tortious interference with the Dealer Franchise Agreement proximately caused $28,880 in "Contractual damages" to Star Tex.

No questions were requested or submitted asking whether Star Tex breached the Dealer Franchise Agreement. The trial court signed a final judgment in conformity with the jury's verdict awarding to Star Tex $10,700 in damages and $30,699.59 in attorney's fees from Day & Night; the judgment also awarded to Star Tex $28,880 in damages from Colorado County. The final judgment does not award damages against SNP; however, it provides that Star Tex shall recover costs of court jointly and severally from Day & Night, SNP, and Colorado County.

Day & Night, SNP, and Colorado County timely appealed after the trial court denied their respective motions to disregard certain jury findings and to sign a judgment notwithstanding the verdict.

## ANALYSIS

Day & Night and SNP contend the trial court erred by (1) signing a

8

judgment based on the jury's finding that Day & Night breached the Dealer Franchise Agreement because that agreement already had terminated "due to Star Tex's breach of a preceding dependent material obligation;" (2) "submitting a jury question which presupposes the existence of a[n] enforceable contract between Day & Night Inc. and Star Tex Inc. absent a predicate question or instruction seeking a determination whether an enforceable agreement existed;" and (3) submitting a jury question on attorney's fees and signing a final judgment awarding fees "where there was no enforceable agreement . . . and no legally or factually sufficient evidence of timely presentment . . . ."

Colorado County contends that the jury's (1) finding of tortious interference with the Dealer Franchise Agreement is supported by factually insufficient evidence and contrary to the great weight and preponderance of the evidence; and (2) damage award for tortious interference lacks a complete damage calculation, is supported by factually insufficient evidence, and is contrary to the great weight and preponderance of the evidence.

We address the appellants' contentions in turn.

## I. Issues Raised by Day & Night

Day & Night contends contractual liability is foreclosed because Star Tex previously and materially breached the Dealer Franchise Agreement by delivering Phillips-branded gasoline instead of the Citgo-branded gasoline specified in the contract. Although Day & Night's legal argument is straightforward, the exact nature of its appellate complaint is not clear from its briefing.[2]

---

[2] The final judgment contains no damage award against SNP; the jury awarded zero damages against SNP in response to Question No. 4, and Star Tex does not challenge this finding. The final judgment makes SNP jointly and severally liable for court costs, but SNP does not challenge the trial court's cost award on appeal. Therefore, our analysis of appellate issues raised by Day & Night and SNP focuses solely on Day & Night's liability under the final

Day & Night's brief contends at one point that the trial court erred by denying its motion for summary judgment predicated on the excuse-by-prior-breach argument. We cannot consider this complaint on appeal after trial on the merits because the trial court's earlier summary judgment denial is not appealable. *See, e.g., Ackermann v. Vordenbaum*, 403 S.W.2d 362, 365 (Tex. 1966); *2001 Trinity Fund, LLC v. Carrizo Oil & Gas, Inc.*, 393 S.W.3d 442, 463 n. 6 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Moore v. Jet Stream Invs., Ltd.* 261 S.W.3d 412, 427 (Tex. App.—Texarkana 2008, pet. denied).

Day & Night's brief also argues that legally insufficient evidence supports the jury's "yes" answer to Question No. 1; or, alternatively, that a "no" answer to Question No. 1 is established as a matter of law. These contentions comport with arguments raised in Day & Night's post-trial motion to disregard certain jury answers under Texas Rule of Civil Procedure 301, and correspond to its first issue on appeal.

Day & Night argues elsewhere that charge error exists based on a contention that Question No. 1 impermissibly "presumed enforceability and validity of the Agreement" despite a material prior breach. This contention corresponds to its second issue on appeal.

We address Day & Night's first two issues together because both are intertwined with its underlying legal argument advocating excuse by prior material breach.

### A.    Day & Night's Breach of the Dealer Franchise Agreement

Question No. 1 asked:  "Did Day & Night violate the Dealer Franchise

---

judgment based on the jury's verdict.

Agreement?" The jury answered, "Yes." Other than a damages submission in Question No. 2, no additional questions were submitted relating to Day & Night's breach of the Dealer Franchise Agreement. Day & Night nonsuited its own breach of contract claim against Star Tex during trial; therefore, the jury was not asked to decide whether Star Tex breached the Dealer Franchise Agreement.

In challenging the jury's finding in response to Question No. 1, Day & Night does not dispute that (1) if the Dealer Franchise Agreement was in effect when the initial 10-year term ended in 2011, then it automatically renewed for another year; (2) the agreement obligated Day & Night to purchase gasoline only from Star Tex; and (3) Day & Night ceased purchasing gasoline from Star Tex in May 2011, after which Colorado County began supplying gasoline to the same convenience store.

Day & Night argues instead that the Dealer Franchise Agreement ceased to be in effect before 2011 because Star Tex previously had delivered Phillips-branded gasoline instead of the contractually specified Citgo-branded gasoline. According to Day & Night, Star Tex's undisputed failure to deliver Citgo gasoline means "the terms of the Agreement were not complied with in order to render the Agreement applicable to the delivery of Phillips gasoline." Day & Night emphasizes that the Dealer Franchise Agreement was not amended in a writing signed by both parties as required under paragraph 18 to allow substitution of Phillips-branded gasoline.

We construe Day & Night's legal argument as a contention that a prior material breach of the Dealer Franchise Agreement excused Day & Night's subsequent breach. This contention tracks Day & Night's affirmative defense pleaded in its Fifth Amended Answer, which asserted: "Plaintiff's claims are barred in whole or in part under the theory of excuse of breach due to prior material breach." *See, e.g., Mustang Pipeline Co. v. Driver Pipeline Co.*, 134

11

S.W.3d 195, 196 (Tex. 2004) (per curiam) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance."); *see also Hudson v. Wakefield*, 645 S.W.2d 427, 430 (Tex. 1983) (materiality of prior breach relied upon to excuse performance is a fact question). This construction also tracks Day & Night's closing argument to the jury, during which its counsel stated: "And this contract is very clear. It was written by the Plaintiff and it was signed by Nizar Ali for Day & Night, and it only refers to Citgo. He wanted a Citgo and he never got it."

Day & Night's excuse-by-prior-material-breach argument does not fit as a no-evidence challenge aimed at the jury's "yes" response to Question No. 1. This is so because the jury answered "yes" to a question that correctly placed the burden of proof on Star Tex for its own breach of contract claim against Day & Night. In response to Star Tex's claim, Day & Night invokes an affirmative defense for which Day & Night bore the burden of proof. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006); *Mustang Pipeline Co.*, 134 S.W.3d at 197. "When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

No jury charge question or instruction addressed whether Day & Night's violation of the Dealer Franchise Agreement was excused by a prior material breach. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business* PJC 101.21 (2014) (suggesting form of question asking, "Was *Don Davis*'s failure to comply excused?"); *see also id.* 101.22 (2014) (suggesting form of instruction stating, "Failure to comply by *Don Davis* is excused by *Paul*

12

*Payne*'s previous failure to comply with a material obligation of the same agreement.").

During the charge conference, Day & Night objected to Question No. 1 ". . . as making assumptions that are not included in the evidence or our responses and it presupposes there was a dealer franchise agreement, and we have an objection to the way it is worded." The objection continued: "We think there should be a limiting instruction or a preceding instruction which says 'if you find there was a dealer franchise agreement, then did Day & Night violate the franchise agreement.'" The trial court overruled this objection. Day & Night tendered no requested questions or instructions. *See* Tex. R. Civ. P. 278. It contends on appeal that the trial court erred in overruling its objection to Question No. 1.

We reject Day & Night's charge error complaint regarding Question No. 1 because its objection in the trial court was not "specific enough to call the court's attention to the asserted error in the charge" and did not make "the trial court aware of the complaint, timely and plainly . . . ." *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 240-41 (Tex. 1992); *see also* Tex. R. Civ. P. 274. An objection asking to add the phrase "if you find there was a dealer franchise agreement" to Question No. 1 did not give the trial judge fair notice that Day & Night really was requesting a question and instruction on its affirmative defense of excuse by prior material breach.

Even if the objection hinted at such a request, the objection was not effective to preserve such a complaint for appeal; Day & Night's stated objection suggests at most a threshold dispute about contract formation rather than a dispute about a separate affirmative defense focusing on Day & Night's excuse by Star Tex's prior material breach. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Business* PJC 101.3 (2014) (suggesting form of instruction

13

on formation of agreement stating, "In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.").

It follows that Day & Night's legal argument must be assessed in light of the charge as submitted. Under Rule 279, "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."

We reject Day & Night's suggestion that excuse by prior material breach was established conclusively on this record so as to make the jury's "yes" answer to Question No. 1 immaterial. Day & Night did not conclusively establish excuse because, at a minimum, a fact issue exists as to whether Star Tex's delivery of Phillips-branded gasoline was a material breach of the Dealer Franchise Agreement.

"In determining the materiality of a breach, courts will consider, among other things, the extent to which the nonbreaching party will be deprived of the benefit that it could have reasonably anticipated from full performance." *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994) (citations omitted). "The less the non-breaching party is deprived of the expected benefit, the less material the breach." *Id*. Day & Night says it was deprived of the expected benefit of its chosen gasoline brand.

According to Day & Night, "Star Tex failed to perform [its] . . . obligation resulting in the annulment of the Agreement and excusing the reciprocal anticipated performance by Day & Night." Day & Night also argues: "Star Tex's failure to perform nullified the Agreement and released Day & Night from any obligations it had to Star Tex as related to the Agreement. All purchases of

14

Phillips gasoline were voluntary." Day & Night points to Nizar Ali's testimony that he preferred Citgo because it is a "better brand;" had expected to receive Citgo gasoline; acquiesced to Phillips branding and signage only to avoid delays in opening the convenience store; and was told the brand would be switched to Citgo within two years.

Star Tex points to evidence that (1) Nizar Ali requested the change to Phillips branding; (2) Day & Night accepted Star Tex's gasoline deliveries under the Dealer Franchise Agreement for 10 years without complaint to Star Tex about the brand designation; and (3) Nizar Ali never complained to Shokat Ali about the Phillips branding. Additionally, during cross-examination, Nizar Ali agreed with an assertion that "you didn't really care whether or not it was branded Phillips, Chevron, or Citgo so long as it was making money and sending it over to you."

This record confirms that prior material breach was not conclusively established based on Star Tex's delivery of Phillips-branded gasoline. The parties disputed materiality of the brand designation and introduced conflicting evidence on this point at trial. Substantial evidence demonstrated that the Citgo-versus-Phillips brand designation was not material. Even assuming for argument's sake that Question No. 1 as submitted encompassed at least some elements of Day & Night's affirmative defense, the evidence nonetheless supports an implied fact finding in conformity with the jury's verdict and the trial court's judgment. *See* Tex. R. Civ. P. 279.[3]

---

[3] Day & Night also contends that the Dealer Franchise Agreement already had been breached before 2011 because Day & Night did not buy the required minimum monthly quantities of gasoline. We reject Day & Night's attempted reliance on its *own* claimed breach of the Dealer Franchise Agreement to establish a prior material breach by Star Tex. We also reject Day & Night's contention that (1) Star Tex's prior material breach resulted in a 10-year oral contract for the purchase of Phillips gasoline; and (2) this oral contract violated the statute of frauds. As discussed above, the record does not conclusively establish a prior material breach

We overrule Day & Night's first and second issues.

## B.    Attorney's Fees

In connection with its third issue, Day & Night argues that the attorney's fee award is improper because (1) the Dealer Franchise Agreement is not enforceable based on Star Tex's prior material breach; and (2) "there is no evidence to support an implied finding that Star Tex presented [its] . . . claim to Day & Night." *See* Tex. Civ. Prac. & Rem. Code Ann. § 38.002(2) (Vernon 2015) ("[T]he claimant must present the claim to the opposing party or to a duly authorized agent of the opposing party").[4]

Having already rejected Day & Night's prior material breach contention, we likewise reject Day & Night's contention that a conclusively proven prior material breach precludes both an enforceable contract and an award of attorney's fees in connection with that contract under Chapter 38.

With respect to presentment, Day & Night contends that "[t]he flurry of notices, demands and responses commencing May 2011 were between Star Tex and Colorado County. . . .  No evidence was presented at trial of any notice being addressed to or received by Day & Night."  Day & Night points to testimony that Star Tex never wrote a demand letter to Day & Night asserting that the Dealer Franchise Agreement had been terminated improperly.  Star Tex's Feroz Momin was asked during cross-examination:  "You never made a demand on Day & Night?" He answered:  "No."

---

that terminated the written Dealer Franchise Agreement.

[4] Day & Night objected to Question No. 5 on attorney's fees during the charge conference on these grounds:  "The evidence has shown there was no notice provided to anybody at Day & Night in this matter prior to this lawsuit being filed or even after the lawsuit was filed, and we don't believe that question should be submitted to the jury."  The trial court overruled this objection.

16

The presentment requirement allows the party against whom the claim is asserted an opportunity to tender performance without incurring an obligation for attorney's fees. *Gibson v. Cuellar*, 440 S.W.3d 150, 157 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Jones v. Kelly*, 614 S.W.2d 95, 100 (Tex. 1981)). No particular form of presentment is required. *Id.* "[O]ur supreme court has construed the word to mean simply a demand or request for payment or performance, whether written or oral." *Id.* (citing *Jones*, 614 S.W.2d at 100).

Despite the existing Dealer Franchise Agreement designating Star Tex as the exclusive gasoline supplier for the convenience store located at 10103 Bammel North Houston Road, Shokat Ali signed a Branded Supply Contract with Colorado County for the same location on January 25, 2011. Rumors of a pending change prompted Star Tex's Feroz Momin to visit Shokat Ali at the convenience store in February 2011, where he found Shokat Ali remodeling the facilities.

Momin testified as follows: ". . . I said, well, we heard some rumor you're changing brand. I told Shokat, I said, look, there is some obligation there that you need to fulfill." Momin further testified that he told Shokat Ali: "Fulfill that obligation. Before [you] do anything, if I can help you, I'm willing to help you."

Day & Night contends the reference to an "obligation" is "vague" and was not "explained or clarified." We reject this contention because this testimony would enable a reasonable and fair-minded fact finder to conclude that Star Tex met the presentment requirement. *See Criton Corp. v. Highlands Ins. Co.*, 809 S.W.2d 355, 358 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (presentment established based on testimony of general contractor's president who said he telephoned subcontractor's president and requested full performance); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

We overrule Day & Night's third issue.

## II.     Issues Raised by Colorado County

In two issues, Colorado County challenges the factual sufficiency of the evidence supporting the jury's "yes" answer to Question No. 6 addressing tortious interference with an existing contract and the $28,800 damage award for interference in response to Question No. 7.

We pause at this juncture to address terminology confusion in the briefing.

Although Colorado County's brief frames the issues presented as factual sufficiency challenges to adverse jury findings, Colorado County did not file a motion for new trial to preserve a factual sufficiency challenge as required under Texas Rule of Civil Procedure 324(b)(2).

Instead, Colorado County filed a motion to disregard jury findings and for judgment notwithstanding the verdict under Texas Rule of Civil Procedure 301 in which it argued legal sufficiency points. Elsewhere in its brief, Colorado County attacks the legal sufficiency of the evidence supporting these adverse jury findings.

A legal sufficiency challenge corresponds to the relief Colorado County requests on appeal — rendition of a take-nothing judgment in its favor on Star Tex's tortious interference claim. Accordingly, we construe Colorado County's appellate issues as legal sufficiency challenges aimed at the jury's answers to Question No. 6 and Question No. 7.

The test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minding people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827. When reviewing legal sufficiency of the evidence, we consider the evidence in the light most favorable to the verdict and indulge every reasonable inference to support it. *Id*. at 822. We credit favorable evidence if a reasonable juror could do so and disregard contrary evidence if a reasonable juror

18

could not credit it. *Id.* at 827.

Colorado County did not object to Question No. 6 or Question No. 7 at the charge conference. When the parties have not objected at trial to the substance of the law set forth in the jury charge, we review sufficiency of the evidence in light of legal standards contained in the unobjected-to charge. *See, e.g., Osterberg v. Peca,* 12 S.W.3d 31, 55 (Tex. 2000) ("[I]t is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge."). For this reason, we do not consider Colorado County's appellate contention that "Star Tex failed to submit the proper measure of damages" in Question No. 7.

With these clarifications, we turn to Colorado County's sufficiency challenges.

## A.     Tortious Interference

The jury answered "yes" to Question No. 6, which asked: "Did CCOC intentionally interfere with the Dealer Franchise Agreement?" The jury was instructed as follows: "Interference is intentional if committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result." This submission tracks the Pattern Jury Charge for intentional interference with an existing contract. *See* Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges:  Business* PJC 106.1 (2014). Colorado County assails the evidence supporting this answer on multiple grounds.

In an argument that echoes Day & Night's position, Colorado County initially contends that the Dealer Franchise Agreement no longer was in existence by 2011 and could not be interfered with because the agreement previously had lapsed due to Star Tex's delivery of Phillips-branded gas instead of Citgo-branded

19

gas. We rejected this argument earlier, and we reject it again now for the same reasons.

Colorado County argues that no interference with the Dealer Franchise Agreement occurred because "at no time did Star Tex have a contract with SNP, the party with whom Colorado County contracted. Star Tex only had a contract with Day & Night." This argument is unavailing. Shokat Ali owned and was president of SNP; after January 1, 2011, he also owned and was president of Day & Night. SNP leased the convenience store from Day & Night in May 2009 for a term that ran until May 31, 2014. The lease was in effect when Colorado County entered into the Branded Supply Contract with SNP on January 25, 2011, and when Colorado County began delivering Valero-branded gasoline to the convenience store on May 4, 2011. Paragraph 21 of the Dealer Franchise Agreement extends the contract's binding effect to reach "any party buying, purchasing, leasing, renting or otherwise having control of the branded outlet so long as this Agreement is in effect." In light of this evidence, Colorado County cannot plausibly contend that SNP was a stranger to the preexisting gasoline supply agreement for the Bammel North Houston Road location.

Colorado County next argues that the record lacks evidence of intent, interfering acts, and proximate cause because Shokat Ali told its representative that no gasoline supply contract was in place for this location; "SNP/Day & Night decided on its own accord to change suppliers . . . and brand due to complaints/dissatisfaction with Star Tex;" SNP requested payment of the $50,000 signing bonus "as an up-front advance;" and "[p]ayments of incentives are a common practice in the motor fuel supply industry."

We reject these contentions because the jury reasonably could have concluded that the requisite intent, interference, and causal link were established

20

based on evidence that Colorado County (1) committed to pay a $50,000 signing bonus to switch an already-branded convenience store location from Phillips to Valero, and then (2) moved forward with the change to supply Valero gasoline to the exclusion of Star Tex even after receiving a copy of Star Tex's unterminated Dealer Franchise Agreement for the same location and declining Star Tex's offer to reimburse conversion costs.

When asked whether Colorado County could have pulled out of the Branded Supply Contract without expense once it received a copy of the prior Dealer Franchise Agreement in May 2011, Colorado County's president answered: "I sure could have." The jury was free to reject testimony that Colorado County's president believed the Dealer Franchise Agreement already had terminated after 10 years.

A reasonable jury could conclude that testimony about the absence of complaints and the lack of a termination notice to Star Tex indicated there was no dissatisfaction with its service; that the presence of branding at the location indicated the existence of a contract with a distributor; that the existing contractual relationship with Star Tex would have continued for at least another year; and that the signing bonus played an active role in causing the change in distributors. *See Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) ("The summary judgment evidence showed that Graham cajoled these beauty consultants into continuing to sell to her, even after they knew that dealing with Graham was in breach of their agreements."); *see also Anderson, Greenwood & Co. v. Martin*, 44 S.W.3d 200, 218 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).

A reasonable jury also could conclude from these circumstances that Colorado County "'desire[d] . . . to cause the consequences of'" its acts or

21

"'believe[d] . . . that the consequences [were] . . . substantially certain to result . . . .'" *Sw. Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex. 1992) (quoting Restatement (Second) of Torts § 8A (1965)). The consequence here was cessation of the Dealer Franchise Agreement that had governed gasoline supplies at this location since 2001.

We overrule Colorado County's first issue.

## B.    Damages

In response to Question No. 7, the jury awarded $28,800 as "[c]ontractual damages" that "would fairly and reasonably compensate Star Tex for its damages, if any, proximately caused by" Colorado County's interference with the Dealer Franchise Agreement. The jury charge does not define the term "[c]ontractual damages."

Colorado County contends the evidence is legally insufficient to support the awarded amount because "there was no complete damage calculation submitted by Star Tex as required by law." It also contends the evidence does not support "[c]ontractual damages" based on gasoline deliveries Star Tex would have made to the Bammel North Houston Road location after the Dealer Franchise Agreement automatically renewed in April 2011.

Under the Dealer Franchise Agreement, Star Tex received one cent per gallon above the "posted terminal price" that Star Tex paid to purchase gasoline from the refiner. Momin testified that Star Tex also received a discount from Phillips for prompt payment of its invoices "which comes out [to] 2.75, three cents" per gallon. Momin also testified: "We [were] collecting one cent a gallon from [Day & Night], plus we receive some benefit from refineries, okay, and some of the fuel tax discount, our average comes to four cents." Momin later repeated

22

this figure: "Four cents is [Star Tex's] loss because we get some other discount." Star Tex's "[c]ontractual damages" calculation is based on multiplying the 60,000 gallon monthly minimum by four cents per gallon.

Colorado County attacks this computation on grounds that the 60,000-gallon-per-month-figure is inflated because Day & Night frequently fell below the required monthly minimum while the Dealer Franchise Agreement was in effect. Colorado County also attacks the three-cent-per-gallon discount as being unduly speculative because it depends on "(1) the amount charged by Phillips on each invoice and (2) Star Tex paying that invoice on time." Colorado County contends that these damages "are subject to many variables, principally the economy and fluctuation of the cost of gasoline." Colorado County further argues Star Tex is entitled only to 11 months of "[c]ontractual damages" because Sohail Ali "effectively terminated the agreement at the end of that additional year" by giving oral notice of termination in April or May 2011.[5]

We reject Colorado County's no evidence challenge in light of the admonition that "[r]ecovery for lost profits does not require that the loss be susceptible of exact calculation." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d

---

[5] Colorado County contends that Sohail Ali "effectively terminated" the Dealer Franchise Agreement when, according to his testimony, he called Star Tex in April or May 2011 to notify it that "my father had received a call from Colorado County Oil saying that the Valero signs are in so if they could let the gas partner know that they can take down their Phillips sign so they can come in and install their Valero signage." Sohail Ali testified he told Star Tex "[t]hat we would need those signs to be removed because we're changing over to Valero so you guys have 30, 45 days before the appointment from the sign company to come out and install the Valero signage." The jury was entitled to rely on Shokat Ali's testimony that he never provided a notice to Star Tex terminating the Dealer Franchise Agreement and, to his knowledge, no one else did either. In any event, Star Tex's status as a Valero distributor (among multiple brands) would allow a reasonable jury to conclude that Sohail Ali's statements to Star Tex about switching to Valero signage were not necessarily equivalent to saying that Star Tex was being terminated as the convenience store's supplier. The jury also was entitled to conclude that Sohail Ali's oral termination notice, if made, resulted from Colorado County's interference with the Dealer Franchise Agreement.

23

80, 84 (Tex. 1992) (citing *White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983), and *Sw. Battery Corp. v. Owen*, 131 Tex. 423, 115 S.W.2d 1097, 1098 (1938)). "[T]he injured party must do more than show that they suffered some lost profits." *Holt Atherton Indus., Inc.*, 835 S.W.2d at 84. "The amount of the loss must be shown by competent evidence with reasonable certainty." *Id.* "As a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits can be ascertained." *Id.*

Momin's testimony meets this threshold. He relied on a ten-year history of gasoline sales to this specific convenience store and discounts received for prompt payment in computing Star Tex's "[c]ontractual damages" going forward. Although Day & Night's purchases had met the 60,000-gallon minimum in some months and not in others, Star Tex was contractually entitled to that minimum. Colorado County's monthly sales to the convenience store exceeded 60,000 gallons in some months following the switch.

Momin permissibly offered computations for damages from Colorado County ranging from $26,400 on the low end for 11 months of continued gasoline purchases after May 2011 to $288,000 for another decade of gasoline purchases.[6] The jury permissibly decided upon a damage figure within the range set out in the testimony that equates to 12 months of continued gasoline purchases at 60,000 gallons per month multiplied by four cents per gallon. *See, e.g., City of Houston v. Harris Cty. Outdoor Advert. Ass'n*, 879 S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

---

[6] Momin computed Star Tex's "[c]ontractual damages" to be $26,400 for the first 11 months after Star Tex's deliveries ceased in May 2011, and $28,800 for the next 12 months from April 2012 until April 2013. He testified at one point that the Dealer Franchise Agreement automatically renewed in one-year increments after the initial 10-year term. Momin then testified that no provision in the Dealer Franchise Agreement required Day & Night to give a one-year notice of termination.

We overrule Colorado County's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/    William J. Boyce
Justice

Panel consists of Justices Boyce, Busby and Brown.

25